**Joel D. JOSEPH, Plaintiff,**

v.

**XEROX CORPORATION, et al., Defendants.**

**Civ. A. No. 83–3670.**

United States District Court, District of Columbia.

Sept. 6, 1984.

Brian Paul Jenny, Washington, D.C., for plaintiff.

Brien A. Roche, Fairfax, Va., for defendants.

## MEMORANDUM

GESELL, District Judge.

This is a libel case arising from a review published in Publishers Weekly of a book written by the plaintiff, *How to Fight City Hall ... And the IRS, Banks, Corporations, Your Local Airport and Other Nuisances* (Contemporary Books, Inc., Chicago 1983). The case is before the Court on defendants' motion for summary judgment, which has been fully briefed by the parties.

The review at issue here was published in the September 9, 1983 issue of Publishers Weekly, a trade magazine published by the defendant Xerox Corporation. The text of the review is short and is set out in full here:

This is a potentially dangerous book. The author imparts a little knowledge about fighting a variety of institutions, from City Hall to the IRS to one's landlord. Unfortunately, neither the institutions discussed nor the methods of achieving redress can be covered in any more than cursory fashion in a single book, yet readers are encouraged to sally forth and do battle knowing only half the facts, strategies and defenses they are likely to encounter. Worse yet, Joseph (who is an attorney) makes serious mistakes in attempting to paint with such a broad brush, including some erroneous statements of what the law is. Perhaps the most valuable parts of the book are the lists of government agencies, consumer and activist groups from which one can seek advice. The author's goal

of helping the individual right formerly unredressed grievances is salutary, but his execution falls far short of that goal. Donn A. Randall, a New York lawyer who regularly contributes to Publishers Weekly, wrote the review, for which he was paid $20.

Joseph wrote to the R.R. Bowker Co.[1] on September 16, 1983 demanding to know what "erroneous statements of ... the law" he had made in the book as alleged in the review. His letter was received on September 28 and was answered on October 6. The answer included a five-page memorandum from Randall, including case and statute citations, listing what he regarded as some of the book's errors. Joseph responded on October 11 with a demand for a retraction and free advertising to minimize the harm to his reputation and book sales. Xerox refused but offered to print a letter to the editor from Joseph replying to the review. This action followed.

Joseph claims that the review has damaged his reputation as a lawyer and a writer. He alleges that the book is not in fact potentially dangerous and that it contained no significant errors of fact or law, and that the review was published maliciously and in reckless disregard of the truth.

On this motion for summary judgment, defendants contend that the review is not capable of a defamatory meaning, that it is not false, that the statements therein are privileged as fair comment, and that plaintiff is a public figure and is unable to prove actual malice.

■ The Court's first task is to determine whether the book review is capable of a defamatory meaning. In the District of Columbia, a statement is defamatory "if it tends to injure plaintiff in his trade, profession or community standing, or lower him in the estimation of the community." *Ol-*

inger v. American Savings & Loan Ass'n, 409 F.2d 142, 144 (D.C.Cir.1969) (quoting *Afro-American Publishing Co. v. Jaffe,* 366 F.2d 649, 654 (D.C.Cir.1966)). A court's power to hold as a matter of law that a statement is not capable of a defamatory meaning is limited to those cases where it is beyond doubt that a reasonable juror could find no defamatory meaning in the published statement. *McBride v. Merrell Dow & Pharmaceuticals Inc.,* 717 F.2d 1460, 1465 (D.C.Cir.1983). Given this standard, the Court is unable to find that the book review is incapable of supporting a defamatory meaning. A reasonable reader could conclude, reading the review as a whole, that the plaintiff lacks competence at both lawyering and writing.

■ But even if a publication is found to be potentially defamatory, a plaintiff who is a public figure has a significantly more demanding burden of proof than a private plaintiff. A public figure plaintiff must prove both that the publication is false,[2] *Cox Broadcasting Corp. v. Cohn,* 420 U.S. 469, 490, 95 S.Ct. 1029, 1043, 43 L.Ed.2d 328 (1975), and that the defendants published it in knowing or reckless disregard as to its falsity, that is, "with [a] high degree of awareness of [its] probable falsity." *Garrison v. Louisiana,* 379 U.S. 64, 74, 85 S.Ct. 209, 215, 13 L.Ed.2d 125 (1964). The Supreme Court recently reemphasized that this is a heavy burden for public figure libel plaintiffs. They must "demonstrate with clear and convincing evidence that the defendant realized that his statement was false or that he subjectively entertained serious doubt as to the truth of his statement." *Bose Corp. v. Consumers Union of United States,* —— U.S. ——, 104 S.Ct. 1949, 1965 n. 30, 80 L.Ed.2d 502 (1984).

■ For the reasons set out below, this Court finds that the plaintiff is a public figure and that he has not raised any mate-

---

1. The R.R. Bowker Co. is a trade name for the division of Xerox Corporation that publishes Publishers Weekly. It is not a legal entity, although it was joined as a defendant here along with Xerox and the review's writer, Donn Randall.

2. The truth or falsity of a defamatory publication is determined by considering the publication as a whole. *Hoffman v. Washington Post Co.,* 433 F.Supp. 600, 603 (D.D.C.1977), *aff'd* 578 F.2d 442 (D.C.Cir.1978).

rial issue of fact sufficient to defeat the defendants' motion for summary judgment.

Any inquiry into a libel plaintiff's status as a public figure must begin with *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), where the Supreme Court found two types of public figures:

> For the most part those who attain this status [as public figures] have assumed roles of especial prominence in the affairs of society. Some occupy positions of such persuasive power and influence that they are deemed public figures for all purposes. More commonly, those classed as public figures have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved. In either event, they invite attention and comment.

418 U.S. at 345, 94 S.Ct. at 3009.

The plaintiff here is plainly not a public figure for all purposes. To decide whether he is a limited-purpose public figure, the Court must make a three-step analysis, deciding whether a public controversy existed here, whether the plaintiff "thrust himself to the forefront" of such controversy, and whether the alleged defamation concerned his role in the controversy. *See Waldbaum v. Fairchild Publications, Inc.*, 627 F.2d 1287, 1296–98 (D.C.Cir.), *cert. denied* 449 U.S. 898, 101 S.Ct. 266, 66 L.Ed.2d 128 (1980).

A public controversy is not merely something that the press deems newsworthy or that otherwise has attracted public attention. *Waldbaum v. Fairchild Publications, Inc.*, 627 F.2d at 1296. It must be not just a matter of broad general interest but a specific controversy. *Hutchinson v. Proxmire*, 443 U.S. 111, 135, 99 S.Ct. 2675, 2688, 61 L.Ed.2d 411 (1979). "If the issue was being debated publicly and if it had foreseeable and substantial ramifications for non-participants, it was a public controversy." *Waldbaum*, 627 F.2d at 1297.

The controversy at issue here is somewhat unusual in that it is both broad and specific, consisting of not one but several related controversies. The general controversy here concerns the use of the law by consumer and civil rights activists against big government and big business. The controversies under that heading include employment and housing discrimination, environmental pollution, consumer product safety, and other consumer and civil rights protected by law. The specific controversy that cuts across all these issues is the extent to which individual members of the public can competently represent themselves in courts and administrative agencies in these areas of the law against government and business parties, and whether they should do so. This is a controversy of intense public interest and debate. It touches on the role both of the law and of the legal profession in our society.

Once the public controversy has been identified, the Court must determine whether the plaintiff played a sufficient role in the controversy that he can be said to have invited attention and comment. As the Court of Appeals for this Circuit has said:

> Trivial or tangential participation is not enough.... The plaintiff either must have been purposely trying to influence the outcome or could realistically have been expected, because of his position in the controversy, to have an impact on its resolution.... Those who attempt to affect the result of a particular controversy have assumed the risk that the press, in covering the controversy, will examine the major participants with a critical eye.

*Waldbaum*, 627 F.2d at 1297–98.

The plaintiff here has actively tried to influence the outcome of the controversy about self-representation and legal activism by the public through a number of writings over the years. He has written chapters in books, newspaper articles, and several books. His books include *The Handbook of Employees' Rights, Legal Agreements in Plain English*, and the book that was the subject of the book review complained of here, *How to Fight City Hall* .... The main theme of *How to Fight City Hall*

... is how a lay person can represent himself in lawsuits and less formal proceedings in a variety of disputes.[3] The book is directed at a national audience: it provides nation-wide lists of consumer agencies and summaries of differences in laws among the states. It is apparent that Joseph has taken a vocal stand on the issue of legal self-representation and has invited comment. In addition, the plaintiff's publisher, Contemporary Books, Inc., actively encouraged public comment on the book by sending an advance copy to Publishers Weekly for its convenience in generating a review.[4]

The final step in the public figure analysis is the connection between the alleged defamation and the plaintiff's role in the public controversy. That link is plain here. The book review takes the position that it is impossible for a single volume adequately to prepare a lay person for self-representation in a broad variety of cases. Consistent with this view, the review maintains that the book arms readers with "only half the facts, strategies and defenses they are likely to encounter," and that the book's author compounds his inevitable incompleteness by "some erroneous statements

of what the law is." This is precisely the kind of criticism Joseph invited. The Court concludes that Joseph is a public figure for purposes of the controversy pertaining to the ability of laymen without professional representation adequately to protect their property and other rights in a complex legal system.

To defeat a motion for summary judgment, a public figure plaintiff is obligated at least to show that there exists a material issue of fact that, if decided in his favor, could lead a reasonable jury to conclude that the defamatory publication was false and that it was published maliciously with knowing or reckless disregard as to its falsity, that is, that "the defendant in fact entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson*, 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968).

■ The Court need not address whether the plaintiff has raised a material issue as to the book review's falsity, because even if false, the plaintiff has wholly failed to raise any issue of actual malice on the part of any of the defendants.[5]

---

3. The book contains occasional caveats about consulting a lawyer, but there is no question that it is designed for the *pro se* litigant.

4. Courts commonly find that writers have injected themselves into public controversies and thus have become limited-purpose public figures. *See, e.g., Liberty Lobby, Inc. v. Anderson*, 562 F.Supp. 201, 207–08 (D.D.C.1983); *Hoffman v. Washington Post Co.*, 433 F.Supp. 600, 604 (D.D.C.1977), *aff'd* 578 F.2d 442 (D.C.Cir.1978); *Hotchner v. Castillo-Puche*, 404 F.Supp. 1041, 1047 (S.D.N.Y.1975), *rev'd on other grounds* 551 F.2d 910 (2d Cir.1977); *Guitar v. Westinghouse Electric Corp.*, 396 F.Supp. 1042, 1048, 1054 (S.D.N.Y.1975), *aff'd* 538 F.2d 309 (2d Cir.1976). Plaintiff's protest that he is not as prominent as the writer/plaintiffs in *Hoffman, Hotchner*, and *Guitar* is off-point. The issue is not merely a plaintiff's prominence on some sliding scale of celebrity. The issue is "whether a reasonable person would have concluded that this individual would play or *was seeking to play* a major role in determining the outcome of the controversy...." *Waldbaum v. Fairchild Publications, Inc.*, 627 F.2d at 1298 (emphasis added). *Cf. Hutchinson v. Proxmire*, 443 U.S. at 135, 99 S.Ct. at 2688 (plaintiff's writings for professional journals did not invite sufficient public comment to make him a public figure). The Court

need not decide whether a plaintiff who publishes a book on a matter of public controversy automatically becomes a public figure for purposes of criticism of the book, because the plaintiff here has done more than publish the single book that was adversely reviewed.

5. The precise burden that a public figure plaintiff bears at the summary judgment stage is in some dispute. Judge Wright has suggested that the plaintiff should have to show that he can prove "actual malice" to the satisfaction of the trial court. *See Wasserman v. Time, Inc.*, 424 F.2d 920, 922 (D.C.Cir.) (Wright, J., concurring), *cert. denied* 398 U.S. 940, 90 S.Ct. 1844, 26 L.Ed.2d 273 (1970); *accord Hoffman v. Washington Post Co.*, 433 F.Supp. 600, 604 (D.D.C. 1977). The D.C. Court of Appeals has taken an approach more in line with traditional summary judgment standards, requiring the plaintiff only to show that there are material facts in dispute that if resolved in his favor could lead a reasonable jury to find actual malice by clear and convincing evidence. *Nader v. deToledano*, 408 A.2d 31, 49 (D.C.App.1979). This Court finds that the plaintiff here would fail either standard.

It is conceded that before he wrote the review, defendant Randall believed he knew of at least four instances where New York law differed from that stated in the book, and that he spent about two hours researching those points to make sure he was right. His editor at Publishers Weekly asked Randall if he could justify his comments in the review and received his assurances that he could. Randall was known to Publishers Weekly as a competent, experienced book reviewer who had been the subject of no prior libel allegation.

Against this strong evidence of a good faith belief on the part of all the defendants in the book review's truthfulness, plaintiff alleges: (1) that defendant Randall was "biased" and a "frustrated writer/lawyer who is jealous of plaintiff's accomplishments and publications;" (2) that Randall should have made checks beyond New York law before writing that the book contained "some erroneous statements of what the law is;" (3) that Randall destroyed his research notes for the review; (4) that the editors at Publishers Weekly should have demanded specific substantiation from Randall to back up his claims about the book since they could not have expected him to do much fact-checking for the $20 fee he received for the review.

These allegations fall woefully short and border on the frivolous. The claim of bias, arising from the fact that Randall worked for a bank at the time of the review and banks were one of the book's "targets," is wholly unsubstantiated. Even if well-founded, bias does not establish malice but is only evidence that a defendant may have acted with reckless disregard for the truth. The other claims similarly provide no support for the contention that Randall or his editors "subjectively entertained serious doubt" as to the review's truthfulness. *Bose Corp. v. Consumers Union,* 104 S.Ct. at 1965 n. 30. The failure of the editors to investigate further or demand more specific substantiation does not raise a jury ques-

tion. *Gertz v. Robert Welch, Inc.,* 418 U.S. at 332, 94 S.Ct. at 3003; *Beckley Newspapers v. Hanks,* 389 U.S. 81, 84–85, 88 S.Ct. 197, 199–200, 19 L.Ed.2d 248 (1967) (per curiam). Nor is there any evidence whatsoever to find that the claims in the book review were "inherently improbable" or that the editors had reason to doubt Randall's accuracy. *See St. Amant v. Thompson,* 390 U.S. at 732, 88 S.Ct. at 1326.

For the foregoing reasons, the Court concludes that the defendants are entitled to summary judgment. An appropriate Order is filed herewith.[6]

---

**6.** This disposition renders it unnecessary for the Court to address defendants' claim of a fair comment privilege. That claim raises troubling and difficult questions about the distinction between fact and opinion. Those questions are now before the *en banc* Court of Appeals for this circuit in *Ollman v. Evans,* panel opinion reported at 713 F.2d 838 (D.C.Cir.1984).