Robert D. **GROSSMAN, Jr., et al., Plaintiffs,**

v.

**John W. GOEMANS, et al., Defendants.**

**Civ. A. No. 83–1828.**

United States District Court,
District of Columbia.

March 10, 1986.

Robert D. Grossman, Washington, D.C., pro se.

## MEMORANDUM

GASCH, Senior District Judge.

This diversity action for libel came before the Court for trial on February 21, 1986. The Court finds that plaintiffs are entitled to an award of $10,000 in damages from defendant John W. Goemans.[1] This memorandum constitutes the Court's findings of fact and conclusions of law.

### I.

In 1983, plaintiffs Robert Grossman and Grossman & Flask, P.C., served as tax counsel to Goldmar Ltd., Inc. ("Goldmar") and Pangold Ltd., Inc. ("Pangold"), two firms engaged in leasing real property in Canada. On May 17, 1983, in response to a request from Arthur Rogow, president of Goldmar and Pangold, plaintiffs sent an opinion letter to Rogow which assumed the existence of hypothetical facts and concluded that certain rental payments made by

---

[1] At an earlier hearing, plaintiffs notified the Court that they had settled their claims against a second defendant, Stephen W. Sharmat. At trial, plaintiffs presented no evidence against Sharmat, and this judgment is accordingly rendered only as to defendant Goemans. No appearance on behalf of Goemans was made at trial or at two scheduled pretrial conferences, and thus no evidence was presented in support of Goemans' position.

Goldmar and Pangold were tax deductible. Rogow circulated the letter to investors.

Stephen W. Sharmat, a Pangold investor, had retained Goemans to investigate Goldmar and Pangold and to explore prospects for establishing a Goldmar/Pangold investors group. On May 31, 1983, Goemans sent a letter to the Securities and Exchange Commission which accused Goldmar, Pangold, and their principals of fraud. Goemans also stated that, through issuance of the opinion letter, Grossman "has established himself and perhaps his law firm as an aider and abettor to the Goldmar/Pangold fraud if not as an actual co-conspirator thereto." The letter urged that Grossman "be enjoined ... from furthering Rogow's fraudulent schemes."

Goemans sent copies of his letter to an attorney and to 170 investors in Goldmar and Pangold. On June 15, 1983, Grossman received a letter from Dr. Irvin H. Jacobs, a Goldmar investor, who stated that he had received a copy of Goemans' letter and wanted Grossman's reply. The SEC never responded to Goemans' letter, and there is no evidence that the SEC ever pursued an action against plaintiffs for aiding and abetting or conspiring to further securities fraud.

## II.

The four elements to a cause of action for libel are: (1) a false and defamatory statement; (2) unprivileged publication to a third party; (3) fault amounting at least to negligence on the part of the publisher; and (4) either actionability irrespective of harm or the existence of special harm caused by the publication. *Restatement (Second) of Torts* § 558 (1976); *see Afro-American Publishing Co. v. Jaffe*, 366 F.2d 649 (D.C.Cir.1966).

The factfinder must determine the truth or falsity of the alleged defamation. *See Liberty Lobby, Inc. v. Anderson*, 746 F.2d 1563, 1577–78 (D.C.Cir.1984), *cert. granted*, —— U.S. ——, 105 S.Ct. 2672, 86 L.Ed.2d 691 (1985). The Court finds that Goemans' allegations were false, since the uncontradicted evidence reveals that plaintiffs sent their opinion letter solely to express their legal opinion based upon hypothetical facts, and not to further fraud.[2] Moreover, in the District of Columbia, charges of criminal conduct are libelous *per se. See Farnum v. Colbert*, 293 A.2d 279 (D.C.App.1972).

Plaintiffs also have met the second element. Through production of the Goemans letter and the letter from Dr. Jacobs, plaintiffs have met their burden of establishing publication. *See Howard University v. Best*, 484 A.2d 958 (D.C.App.1984).[3]

Since plaintiffs are private individuals, they may recover upon a showing of negligence. *See Dresbach v. Doubleday & Co.*, 518 F.Supp. 1285 (D.D.C.1981); *Phillips v. Evening Star Newspaper Co.*, 424 A.2d 78 (D.C.App.1980), *cert. denied*, 451 U.S. 989, 101 S.Ct. 2327, 68 L.Ed.2d 848 (1981). The record reveals that Goemans failed to make an adequate investigation of plaintiffs' conduct before making his charges. Indeed, Goemans admits that he did not engage in any research as to the legal conclusions reached in plaintiffs' opinion letter, but rather based his views upon "common sense." Deposition of John W. Goemans, Jan. 19, 1984 at 110–14. Goemans' conduct fell far short of the investigation a reasonable person would undertake before making allegations of criminal conduct. *Cf. Joseph v. Xerox Corp.*, 594 F.Supp. 330 (D.D.C.1984).

Finally, plaintiffs have met the fourth element of a libel cause of action, because

---

**2.** In his answer and pretrial statement, Goemans asserts that his statements were true. There is not a scintilla of support for this position. There is no evidence, for example, of a primary violation of the antifraud provisions of the securities laws, nor is there evidence that plaintiffs acted with the scienter necessary to aider and abettor liability. *See SEC v. National*

*Student Marketing Corp.*, 457 F.Supp. 682 (D.D.C.1978).

**3.** While Goemans has asserted a qualified privilege, he has not established grounds for invocation of the privilege. *See Roland v. d'Arazien*, 685 F.2d 653 (D.C.Cir.1982); *Smith v. District of Columbia*, 399 A.2d 213 (D.C.App.1979).

false allegations of criminal conduct are libelous *per se* and thus actionable without proof of special damages. *See Farnum v. Colbert,* 293 A.2d at 281.

### III.

Plaintiffs have offered no evidence of any actual damages they suffered as a result of the libel. Rather, they seek award of presumed damages for loss to reputation and punitive damages to deter Goemans from similar conduct in the future.

In libel cases, presumed and punitive damages are permitted when it is shown that the defendant acted with knowledge of falsity or reckless disregard for the truth. *See Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 349, 94 S.Ct. 2997, 3011–12, 41 L.Ed.2d 789 (1974); *Davis v. Schuchat,* 510 F.2d 731, 737 (D.C.Cir.1975); *Ingber v. Ross,* 479 A.2d 1256, 1265 (D.C.App.1984). The Court concludes that plaintiffs meet that standard. Goemans made his allegations with a reckless disregard for the truth because he failed to make a reasonable investigation of the veracity of his charges.

The Court has broad discretion in determining the amount of presumed damages and may consider " 'the seriousness of the defamatory charge, the extent of distribution of the defamation, the extent to which the communication was actually believed, and plaintiff's prominence and professional standing in the community.' " *Ingber v. Ross,* 479 A.2d at 1265 (quoting R. Sack, *Libel, Slander, and Related Problems* 354–55 (1980)).

In this case, Goemans' charges were serious and were published to more than 170 persons. As attorneys, plaintiffs have a clear interest in maintaining untarnished reputations. There is little to suggest, however, that recipients of Goemans' letter believed or credited Goemans' charges. *Compare Secord v. Schlachter,* 568 F.Supp. 56 (D.D.C.1983).

■ Damages for loss of reputation without proof of actual damage "are extremely difficult to quantify," and in such cases, "a nominal recovery may be sufficient to vindicate the injury to reputation." *Airlie Foundation, Inc. v. Evening Star Newspaper Co.,* 337 F.Supp. 421, 431 (D.D. C.1972). Since this judgment establishes the falsity of Goemans' allegations, an award of $2,500 in presumed damages will be sufficient to vindicate the injury to plaintiffs' reputation.

An award of punitive damages requires a finding of actual malice or wanton conduct. *See Afro-American Publishing Co.,* 366 F.2d at 661. The Court concludes that Goemans' conduct was wanton. As noted, Goemans made his allegations without conducting a reasonable investigation, and there is evidence that Goemans' letter was motivated by his desire to recruit Pangold and Goldmar investors to the group he and Sharmat were forming.

■ The Court is mindful that punitive damages are not favored. *See Vassiliades v. Garfinckel's,* 492 A.2d 580, 593 (D.C. App.1985). Such awards must "be large enough to act as an effective deterrent. They should not be larger." *Collins v. Brown,* 268 F.Supp. 198, 201 (D.D.C.1967). Punitive damages awards may take into account any profit made by the defendant as a result of the libel, as well as plaintiffs' litigation costs. *Davis v. Schuchat,* 510 F.2d at 738 n. 7. There is nothing in the record to indicate that Goemans profited from his libel, but the record does indicate that plaintiffs have incurred significant litigation costs. In view of these circumstances, the Court concludes that an award of $7,500 in punitive damages is appropriate and will serve as an effective deterrent.

### ORDER

This case having come before the Court for trial on February 21, 1986, and the Court having considered the evidence and made the findings of fact and conclusions of law described in the accompanying memorandum, it is by the Court this 10th day of March, 1986,

ORDERED that judgment be, and hereby is, entered for plaintiffs and against

defendant John W. Goemans; and it is further

ORDERED defendant Goemans pay plaintiffs $2,500 in presumed damages and $7,500 in punitive damages.