**John M. LOTHSCHUETZ; Carolyn C. Hill; and United Telecommunications, Inc., Plaintiffs–Appellees and Cross–Appellants,**

v.

**James M. CARPENTER and Carpenter Radio Co., Defendants–Appellants and Cross–Appellees.**

Nos. 87–3905, 87–3906.

United States Court of Appeals, Sixth Circuit.

Submitted Jan. 26, 1990.

Decided March 28, 1990.

James M. Carpenter, Lima, Ohio, pro se.

Warren E. Baker, Prairie Village, Kan., John W. Solomon, Akron, Ohio, Douglas A. Baker, Columbus, Ohio, for plaintiffs-appellees and cross-appellants.

Before WELLFORD and GUY, Circuit Judges; and HULL, Chief District Judge.*

* Honorable Thomas G. Hull, Chief Judge, United States District Court, Eastern District of Tennessee, sitting by designation.

RALPH B. GUY, Jr., Circuit Judge.

In this libel and malicious prosecution action, the district court imposed sanctions and entered a default judgment as to liability against defendants James Carpenter and Carpenter Radio Company for failure to comply with discovery orders. The district court then conducted a bench trial on the issue of damages, which resulted in a judgment for only a nominal award in favor of each plaintiff. The defendants filed a notice of appeal, and the plaintiffs cross-appealed the adequacy of the relief granted by the district court. On review we affirm in part, reverse in part, and remand for further consideration of plaintiff John M. Lothschuetz's request for damages on his malicious prosecution claim.[1]

## I.

Plaintiffs John Lothschuetz and Carolyn Hill served as attorneys for the Federal Communications Commission (FCC) before taking jobs as counsel for plaintiff United Telecommunications, Inc. (UTI), a company involved in telecommunications and related fields. Both before and during the employment of Lothschuetz and Hill with UTI, defendants James Carpenter and Carpenter Radio Company were embroiled in various judicial and administrative proceedings directly or indirectly involving UTI. As a result, Carpenter apparently developed a great deal of animosity towards UTI and its attorneys, particularly Lothschuetz and Hill.

In 1979, Carpenter filed a third-party complaint against Lothschuetz in an Ohio collection case brought by a UTI subsidiary, charging that Lothschuetz violated ethical standards by accepting a position with UTI after working for the FCC. Car-

penter later moved for summary judgment alleging that Lothschuetz's career change contravened federal conflict-of-interest laws. Carpenter's motion also referred to unauthorized practice of law in the State of Ohio. The third-party complaint ultimately was dismissed in 1980. On the administrative front, Carpenter filed documents with the FCC in 1979 seeking damages and severe sanctions against Lothschuetz and Hill for their purportedly unethical behavior, and then submitted papers to the Commission in 1980 berating UTI for allegedly stealing Carpenter's equipment. Both proceedings were dismissed as unsupported. A 1980 letter from Carpenter to President Carter accused UTI of committing "genocide against [Carpenter's] small family business" and reiterated conflict-of-interest allegations against Lothschuetz. Other correspondence sent by Carpenter to several agencies and politicians repeated the general themes that Lothschuetz and UTI had violated conflict-of-interest laws, that Lothschuetz and Hill had ignored ethical responsibilities, and that UTI had stolen Carpenter's equipment.

Lothschuetz, Hill, and UTI responded to Carpenter's attacks by filing this diversity action against Carpenter and his partnership, Carpenter Radio Company, on November 20, 1980, in the United States District Court for the District of Columbia. The four-count complaint set forth a libel claim on behalf of each plaintiff as well as a single claim by all three plaintiffs for malicious prosecution. The case was transferred from the District of Columbia to the Northern District of Ohio in 1981 pursuant to 28 U.S.C. § 1404, yet the parties agree that District of Columbia law still controls the case.[2]

1. John Lothschuetz died in 1982 after this action was filed, and his widow, Mary Lothschuetz, was substituted as his legal representative on June 9, 1982. *Cf.* D.C. CODE ANN. § 12–101 (1989) (providing for survival of "all" causes of action accruing prior to death). For the sake of clarity, however, we shall refer to the surviving claims as those of John Lothschuetz, rather than of Mary Lothschuetz.

2. "[A] federal court in a diversity case applies the law of the state in which it sits, including

the state's choice of law provisions." *Davis v. Sears, Roebuck and Co.,* 873 F.2d 888, 892 (6th Cir.1989). The Supreme Court recently decided that the "law of the forum" in a transferred case is the law of the state from which the case was transferred. *Ferens v. John Deere Co.,* — U.S. ——, 110 S.Ct. 1274, 108 L.Ed.2d 443 (1990). District of Columbia choice of law rules require us to apply District of Columbia substantive law because the defamatory statements were circulated and the groundless actions were pursued almost exclusively in that locale. *See, e.g., Lib-*

While the case was pending in the Northern District of Ohio, the plaintiffs unsuccessfully attempted to obtain discovery from the defendants. Despite numerous court orders directing cooperation in the discovery process, Carpenter remained intransigent. On April 22, 1986, the district court granted the plaintiffs' Federal Rule of Civil Procedure 37(b) motion for monetary sanctions. The district court again sanctioned the defendants on January 27, 1987, imposing additional monetary penalties, striking the defendants' answer and jury demand, and ordering entry of a default judgment as to liability against both defendants.

In March of 1987, the case proceeded to trial strictly on the issue of damages. The district court filed written findings of fact and conclusions of law on April 23, 1987. The district court's opinion and judgment, which focused exclusively upon the plaintiffs' libel claims, awarded each plaintiff $1 in nominal damages and computed the total amount of sanctions for discovery violations to be $2,743.[3] The district court expressly rejected the plaintiffs' demands for compensatory damages, punitive damages, and a permanent injunction. The plaintiffs promptly moved for additional findings on their malicious prosecution claim, which the district court issued on May 15, 1987. Specifically, the court determined that only Lothschuetz had sustained a "special injury," and that he failed to prove anything other than speculative damages. Accordingly, the district court amended the judgment to reflect that the defendants had engaged in malicious prosecution, but refused to modify the damage award. This appeal followed.

In addressing the parties' various contentions, we shall initially consider the plaintiffs' cross-appeal, which raises several significant issues regarding libel and malicious prosecution. We then shall focus upon the defendants' appeal.

## II.

Under District of Columbia law, "[a] successful libel plaintiff can recover three types of damages—nominal, compensatory [and] punitive." *Robertson v. McCloskey*, 680 F.Supp. 414, 415 (D.D.C.1988). Although the district court in this case awarded only nominal damages, the plaintiffs contend that they should have received compensatory and punitive damages as well as injunctive relief. We shall address the plaintiffs' arguments concerning these potential components of recovery *seriatim*.

## A.

The plaintiffs' claims for compensatory damages involve two aspects—"general" and "special" damages.[4] "General damages compensate a plaintiff for harm to his reputation or emotional well-being; special damages, on the other hand, are awarded for losses of an economic or pecuniary nature." *Robertson*, 680 F.Supp. at 415 (citations omitted). Insofar as general damages are concerned, the plaintiffs ostensibly concede that they offered no significant evidence of harm to their reputations. Rather, they assert that general damages must be presumed. While the plaintiffs may avail themselves of the pre-

*erty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287, 1293 n. 3 (D.C.Cir.), *cert. denied*, — U.S. ——, 109 S.Ct. 75, 102 L.Ed.2d 51 (1988).

**3.** The plaintiffs requested nearly $12,000 in sanctions, but the district court only awarded a fraction of that amount. We note in passing that court orders imposing Rule 37 sanctions "are reviewable only for abuse of discretion." *Taylor v. Medtronics, Inc.*, 861 F.2d 980, 985 (6th Cir.1988). To the extent that the plaintiffs have raised an objection on appeal to the district court's sanctions award, we find no abuse of discretion.

**4.** District of Columbia law requires private individuals suing for defamation to prove negligence by a preponderance of evidence in order to recover compensatory damages, whereas public figures must prove actual malice by clear and convincing evidence. *See, e.g., Pearce v. E.F. Hutton Group, Inc.*, 664 F.Supp. 1490, 1509 (D.D.C.), *rev'd on other grounds*, 828 F.2d 826 (D.C.Cir.1987). Because liability was established by the district court's entry of a default judgment, however, we need not consider whether the defendants' conduct satisfied the relevant standard of culpability.

sumption concerning general damages,[5] the presumption entitles them to nothing more than what the district court awarded—nominal damages. *See Grossman v. Goemans*, 631 F.Supp. 972, 974 (D.D.C.1986) (quoting *Airlie Foundation, Inc. v. Evening Star Newspaper Co.*, 337 F.Supp. 421, 431 (D.D. C.1972)). That the court in *Grossman* awarded $2,500 in nominal damages does not perforce suggest that the $1 nominal damage figure selected by the district court in this case is inadequate. The district court's determination concerning the appropriate amount of nominal damages is, in our view, entitled to substantial deference.[6] Here, we find no error in the award of $1 in nominal damages to compensate each plaintiff for harm established only by presumption.

■ Plaintiff Lothschuetz also contends that the district court incorrectly refused to award him special damages. Specifically, Lothschuetz argues that a nascent partnership opportunity with a large law firm was scuttled by the charges that Carpenter made against him. The district court, however, rejected this argument reasoning that the offer was only temporarily withdrawn and that Lothschuetz never had any firm intention of accepting the position. We must accept both of these findings unless they are clearly erroneous. *See* Fed.R. Civ.P. 52(a); *cf. also Hirsch v. Cooper*, 153 Ariz. 454, 737 P.2d 1092, 1095–96 (1986)

(whether defamation plaintiff suffered special damages is a question of fact). The plaintiffs adduced no proof that Lothschuetz intended to do anything more than simply consider the offer. Moreover, the testimony of Mary Lothschuetz supports the district court's conclusion that the partnership offer was only temporarily withdrawn pending resolution of Carpenter's defamatory charges. Upon reviewing the record as a whole, we find that the district court's refusal to award special damages was not clearly erroneous.

### B.

■ All three plaintiffs object to the district court's denial of punitive damages. District of Columbia law only permits punitive damages if a plaintiff proves actual malice by clear and convincing evidence. *See, e.g., Grossman*, 631 F.Supp. at 974 (collecting cases). The plaintiffs contend that the district court's entry of a default judgment as to liability resulted in the conclusive establishment of actual malice as alleged in the plaintiffs' complaint. We find this reliance upon the bare allegations in the complaint unpersuasive. A default judgment in a libel case "is only conclusive as to liability and does not constitute an admission as to damages." *Meehan v. Snow*, 494 F.Supp. 690, 698 (S.D.N.Y.1980), *rev'd on other grounds*, 652 F.2d 274 (2d Cir.1981). Therefore, "[n]o award for puni-

---

5. In *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), the Supreme Court held that "the States may not permit recovery of presumed or punitive damages, at least when liability is not based on a showing of knowledge of falsity or reckless disregard for the truth." *Id.* at 349, 94 S.Ct. at 3011. Justice Powell's plurality opinion in *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 105 S.Ct. 2939, 86 L.Ed.2d 593 (1985), however, limited the *Gertz* rule to cases involving defamatory statements on "matters of public concern." *Id.* at 763, 105 S.Ct. at 2947. *Dun & Bradstreet* expressly indicated that "permitting recovery of presumed and punitive damages in defamation cases absent a showing of 'actual malice' does not violate the First Amendment when the defamatory statements do not involve matters of public concern." *Id.* The effect of *Dun & Bradstreet*, therefore, was to lower the *permissible* threshold for presumed and punitive damages in certain cases; states still retain the right to establish higher standards than the constitutionally mandated minimums defined in *Gertz* and

*Dun & Bradstreet.* The District of Columbia permits recovery of presumed damages, *see, e.g., Grossman v. Goemans*, 631 F.Supp. 972, 974 (D.D.C.1986), and the district court granted the plaintiffs' request for presumed damages in this case. Because the defendants failed to contest or even address the propriety of such an award, we need not consider whether this case involves a matter of public concern (thereby implicating *Gertz*) or not (thereby implicating *Dun & Bradstreet*).

6. Nominal damages are neither designed nor required to compensate a plaintiff in a libel action. As Judge Leventhal observed for the *en banc* court in *Afro-American Publishing Co. v. Jaffe*, 366 F.2d 649 (D.C.Cir.1966), "[t]he allowance of nominal damages performs a vindicatory function by enabling the plaintiff to brand the defamatory publication as false." *Id.* at 660. The underlying purpose of nominal damages makes us especially reticent about second-guessing the size of such awards.

tive damages should be made in a defamation action where the defendant has defaulted if plaintiff has 'produced no evidence upon the basis of which the Court can determine that either of the defendants was chargeable with actual malice.'" *Id.* (citation omitted). Applying this logic, we reject the plaintiffs' attempt to obtain punitive damages based solely upon the admission of liability effectuated by the entry of a default judgment.

■ The plaintiffs further contend that the record conclusively displays the defendants' actual malice, thereby entitling each plaintiff to punitive damages. The plaintiffs' position, however, demonstrates a fundamental misapprehension of the "actual malice" concept. "[T]he actual malice standard is not satisfied merely through a showing of ill will or 'malice' in the ordinary sense of the term." *Harte–Hanks Communications, Inc. v. Connaughton,* —— U.S. ——, ——, 109 S.Ct. 2678, 2685, 105 L.Ed.2d 562 (1989). Rather, actual malice "is the making of a statement with knowledge that it is false, or with reckless disregard of whether it is true." *Liberty Lobby, Inc. v. Rees,* 852 F.2d 595, 601 (D.C. Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1118, 103 L.Ed.2d 181 (1989). In making their argument that Carpenter acted with reckless disregard for the truth, the plaintiffs fail to recognize that reckless disregard "requires more than a departure from reasonably prudent conduct." *Connaughton,* —— U.S. at ——, 109 S.Ct. at 2696. "There must be sufficient evidence to permit the conclusion that the defendant entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson,* 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968). "The standard is a subjective one—there must be sufficient evidence to permit the conclusion that the defendant actually had a 'high degree of awareness of ... probable falsity.'" *Connaughton,* —— U.S. at ——, 109 S.Ct. at 2696 (citation omitted).

In this case, the record clearly indicates that Carpenter merely reasoned (albeit erroneously) that UTI's hiring of Lothschuetz and Hill after their tenures with the FCC was impermissible. Carpenter's subjective belief in the truth of his allegations was manifested at the trial of this matter, where he vehemently reiterated many of the accusations that he raised in papers filed with the FCC and correspondence sent to various politicians. Although Carpenter's judgment and logic may not have been sound, we cannot conclude that he acted with actual malice. Our review of the district court's actual malice ruling as a question of law subject to detailed consideration, *see Connaughton,* —— U.S. at ——, 109 S.Ct. at 2694; *see also Bose Corp. v. Consumers Union of United States, Inc.,* 466 U.S. 485, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984), leads us to the conclusion that the district court correctly rejected the plaintiffs' request for punitive damages.

### C.

Insofar as the plaintiffs' demand for a permanent injunction is concerned, "[t]he usual rule is 'that equity does not enjoin a libel or slander and that the only remedy for defamation is an action for damages.'" *Community for Creative Non–Violence v. Pierce,* 814 F.2d 663, 672 (D.C.Cir.1987). The district court, which characterized the injunction requested by the plaintiffs as an unwarranted prior restraint on freedom of speech, refused to award injunctive relief. I would adhere to the general rule identified by the District of Columbia Circuit and uphold the district court's decision. Judge Wellford, joined by Judge Hull, is of a contrary view and thus the dissent becomes the opinion of the court on this issue.

### III.

■ The District of Columbia allows civil recovery for malicious prosecution, but only upon a showing of "special injury."[7] *See, e.g., Morowitz v. Marvel,* 423 A.2d 196, 198 (D.C.App.1980) (reaffirming "special injury requirement"). Special injury contemplates more than the mere expenditure of the "costs incident to any litigation[.]" *See id.* Even though such expenses resulting

---

7. In addition to "special injury," the District of Columbia requires three elements to establish malicious prosecution: "(1) the underlying suit terminated in the plaintiff's favor; (2) malice on the part of the defendant; [and] (3) lack of probable cause for the underlying suit[.]"

from a single, unsuccessful action are not compensable under the District of Columbia's law of malicious prosecution, "[t]he burden of being compelled to defend *successive* unconscionable suits" meets the special injury standard.[8] *Soffos v. Eaton*, 152 F.2d 682, 683 (D.C.Cir.1945) (emphasis added). According to *Soffos*, as the district court recognized, the plaintiffs could establish a right to recover for malicious prosecution by proving that the defendants repeatedly asserted a groundless legal claim against them.

█ The district court addressed the malicious prosecution claim by reviewing the plaintiffs' amended complaint, which identified three separate actions initiated by Carpenter. The first proceeding, a 1979 "Motion for Censure and Suspension" before the FCC, was directed at plaintiffs Lothschuetz and Hill as well as other UTI attorneys.[9] A third-party complaint filed in December of 1979 against Lothschuetz in the Allen County Court of Common Pleas essentially restated the charges made in the FCC motion.[10] Finally, Carpenter filed a complaint against UTI with the FCC in August of 1980. Analyzing the plaintiffs' malicious prosecution claim in light of the District of Columbia's special injury requirement, the district court reasoned that only Lothschuetz could recover damages for having been sued twice. The other

plaintiffs, Hill and UTI, each had to defend only one action filed by Carpenter. We find this analysis to be sound; only plaintiff Lothschuetz met the special injury standard set forth in *Soffos*.

█ Turning to Lothschuetz's specific request for damages on the malicious prosecution claim, the district court found that Lothschuetz failed to prove any type of emotional harm or injury to his reputation. This finding apparently is not contested on appeal. The district court further denied Lothschuetz compensation for the costs of defending the actions against him because, in the district court's view, he failed to prove with sufficient particularity the amount of attorney fees he incurred in his own defense. The evidence on attorney fees introduced by the plaintiffs provides total defense cost figures pertaining to each of the three actions brought by Carpenter.[11] The district court faulted the plaintiffs for failing to offer any itemization of the legal services for which they sought reimbursement, thereby precluding accurate calculation of their recoverable damages. Because plaintiff Lothschuetz unquestionably incurred costs in defending himself twice against groundless charges, we find that the plaintiff should be given the opportunity to substantiate his claim for legal expenses resulting from the second action. Accordingly, we reverse this

*Brown v. Carr*, 503 A.2d 1241, 1244 (D.C.App. 1986). These three elements are not at issue because of the default judgment as to liability entered by the district court.

8. This rule, which was devised by the United States Court of Appeals for the D.C. Circuit in 1945, is binding in the District of Columbia. As the District of Columbia Court of Appeals has explained, "decisions of the United States Court of Appeals rendered prior to February 1, 1971," like the decisions of the D.C. Court of Appeals, "constitute the case law of the District of Columbia." *M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C. App.1971).

9. Carpenter's subsequent appeal to the Commission itself from an administrative law judge's adverse determination on the motion for censure does refer to UTI in addition to its lawyers, but the appeal does not even offer an argument in support of any claim against UTI.

10. Despite plaintiff UTI's protestations, the district court determined that the third-party complaint was directed solely against Lothschuetz,

rather than against both Lothschuetz and UTI. We find that the district court's conclusion concerning the third-party complaint is not clearly erroneous. *Cf. Anderson v. Bessemer City, North Carolina*, 470 U.S. 564, 574–75, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985) (findings of fact are subject to "clearly erroneous" review under Federal Rule of Civil Procedure 52(a) even when the findings are based "on physical or documentary evidence"). The document itself refers to Carpenter's "third-party complaint against John M. Lothschuetz, Esq." and requests damages only from "the third-party defendant, John M. Lothschuetz, Esq."

11. Affidavits from several sources indicate that Lothschuetz spent $3,715.50 defending himself from the third-party complaint. In addition, total sums of $1,050 in outside fees and $1,430 in UTI in-house fees were expended in the course of defeating the "Motion for Censure and Suspension."

aspect of the district court's ruling and remand the case to the district court for a hearing to determine and itemize the attorney fees plaintiff Lothschuetz legitimately expended in his own defense in the Allen County Court of Common Pleas third-party action.

## IV.

 With respect to the defendants' appeal, their notice of appeal and their appellate briefs make it virtually impossible to discern which aspects of the district court's decisions they find objectionable.[12] Nevertheless, we can detect several arguments relating to various rulings made by the district court that warrant discussion. First, the defendants repeatedly attack the accuracy of the transcripts from various hearings and the trial on damages. Federal Rule of Appellate Procedure 10(e) provides that "[i]f any difference arises as to whether the record truly discloses what occurred in the district court, the difference shall be submitted to and settled by that court[.]" Thus, the defendants must pursue their challenges to the record's accuracy before the district court. *See* Fed. R.App.P. 10(e).

 Second, the defendants contend that this case should be decided in the District of Columbia District Court and Circuit Court of Appeals. The United States District Court for the District of Columbia transferred the case to the Northern District of Ohio pursuant to 28 U.S.C. § 1404(a), which permits the "transfer [of] any civil action to any other district or division where it might have been brought." According to 28 U.S.C. § 1391(a), a diversity action may be filed "in the judicial district where all plaintiffs or all defendants reside, or in which the claim arose." Because both defendants in this case reside in the Northern District of Ohio, the case could have been filed in that court in the first instance, and therefore could be transferred to that district under the authority of 28 U.S.C. § 1404(a). Moreover, "[o]n change of venue the overwhelm-

ing authority holds that the jurisdiction and powers of the transferee court are coextensive with that of the transferor court[.]" *Danner v. Himmelfarb*, 858 F.2d 515, 521 (9th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 2067, 104 L.Ed.2d 632 (1989). Thus, the District Court for the Northern District of Ohio could "make any order to render any judgment that might have been rendered by the transferor court in the absence of transfer." *Id.* We find no merit in the defendants' contention that this case cannot be properly decided in the Northern District of Ohio and reviewed by this court on appeal.

Finally, the defendants object to the trial judge's refusal to recuse himself for bias. This circuit follows the stringent rule requiring recusal whenever "judicial bias and/or hostility is found to have been exhibited at any stage of a judicial proceeding." *Anderson v. Sheppard*, 856 F.2d 741, 746–47 (6th Cir.1988). We have repeatedly emphasized that " 'great care must be taken by a judge to "always be calmly judicial, dispassionate and impartial." ' " *Id.* at 745 (quoting *United States v. Hickman*, 592 F.2d 931, 933 (6th Cir. 1979)). Our review of the record reveals that the district judge who tried this case exhibited precisely this type of professional behavior throughout the course of the proceedings. We find the defendants' argument to the contrary meritless.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

WELLFORD, Circuit Judge, concurring in part and dissenting in part:

 I agree in all respects with the disposition of the majority with one exception in part II C. I would grant a narrow and limited injunction to prohibit Carpenter from continuing and reiterating the same libelous and defamatory charges he and his company have made against Carolyn C. Hill as described in the majority opinion.

With regard to plaintiffs' demand for a permanent injunction, I would find that, in

---

12. While the defendants' notice of appeal is hardly a model of lucidity, we are mindful of Federal Rule of Appellate Procedure 3(c)'s admonition that "[a]n appeal shall not be dismissed for informality of form or title of the notice of appeal." Accordingly, we shall address the defendants' appeal on the merits.

view of Carpenter's frequent and continuing defamatory statements, an injunction is necessary to prevent future injury to Carolyn Hill's personal reputation and business relations. *Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations,* 413 U.S. 376, 390, 93 S.Ct. 2553, 2561, 37 L.Ed.2d 669 (1973); *see also Sunward Corp. v. Dun & Bradstreet, Inc.,* 568 F.Supp. 602, 609 (D.C.Colo.1983). I, however, would limit the application of such injunction to the statements which have been found in this and prior proceedings to be false and libelous.

I dissent, then, only with respect to entrance of an injunction as set out herein, and would remand to the district court for entry of such an injunction.

HULL, District Judge, concurring in part and dissenting in part.

I concur in all of Judge Guy's opinion except part II C. On the issue of the injunction, I concur with Judge Wellford.