H.C. "Blue" HILL, Movant,

v.

PETROTECH RESOURCES CORPORATION and John Burness, Respondents.

No. 2010–SC–000182–I.

Supreme Court of Kentucky.

Oct. 21, 2010.

Matthew James Baker, Bowling Green, KY, Counsel for Movant.

Michael Scott Vitale, English, Lucas, Priest and Owsley, Bowling Green, KY, Counsel for Respondents.

Opinion of the Court by Justice VENTERS.

The question presented in this case is one of first impression in Kentucky: whether a court may enjoin the expression of certain thoughts and opinions before a final adjudication determining that the expression is unprotected by the federal or Kentucky Constitution. We conclude that the circuit court's broad-sweeping and vaguely worded injunction against future expression, before final adjudication of its defamatory character, constitutes an improper prior restraint on speech in violation of the First Amendment of the United States Constitution and Section Eight of the Kentucky Constitution. Given the heavy presumption against the constitutionality of any prior restraint of expression, the issuance of the temporary injunc-

tion was an abuse of the circuit court's discretion that presents this Court with extraordinary cause to grant the relief sought by the Movant under CR 65.09. *Price v. Paintsville Tourism Com'n,* 261 S.W.3d 482, 483 (Ky.2008); *National Collegiate Athletic Association v. Lasege,* 53 S.W.3d 77, 84 (Ky.2001).

For the reasons set forth below, we grant Hill's motion for relief, and vacate the circuit court's temporary injunction as an impermissible prior restraint on speech.

## I. FACTUAL AND PROCEDURAL BACKGROUND

From the limited record before us, the facts appear to be as follows. Respondent John Burness is the sole shareholder of Respondent Petrotech Resources Corporation. Petrotech engages in oil and gas drilling, and to finance its operations, Burness sometimes solicits investments by members of the general public. Among those investors was James Eickman, a resident of Arkansas, who invested $8,500.00 in the Respondents' drilling operations. Believing that there was improper conduct by the Respondents associated with his investment, Eickman sought the return of his funds. With this objective, Eickman retained Movant, H.C. "Blue" Hill, a/k/a Colt Ledger. It appears from the record that Hill's company, Colt Ledger & Associates, seeks to recover investments for its clients using, to put it mildly, highly aggressive collection techniques.

In Hill's initial communication with Respondents he alleged that they were "in violation of several state and federal statutes and regulations." He threatened to file complaints with authorities in Kentucky and Arkansas, and with the federal government unless Eickman's money was returned. Hill also threatened to "post [his] findings on every known blog site dealing with investment scams," and to "notify [Respondents'] potential client base of [their] activity."

When Respondents refused to refund Eickman's investment, Hill began to follow through on his threats. Among other things, he posted on the internet statements that Respondents were engaged in illegal conduct, had violated securities and criminal laws, and that "MOST OF WHAT THEY DO IS CROOKED." (Capitalization in original). He also directly contacted Respondents' customers, clients, and investors, including the City of Edmonton, with whom Respondents were negotiating a substantial gas contract, claiming that Respondents were engaged in illegal activity.

In response to Hill's activities, on August 13, 2009, Respondents filed a complaint in Barren Circuit Court alleging, among other things, defamation and invasion of privacy, requesting damages and injunctive relief. On November 24, 2009, Respondents filed a motion for a temporary injunction pursuant to CR 65.04 seeking to enjoin Hill from making further defamatory comments relating to them.

On November 30, 2009, the circuit court entered an order that enjoined Hill "from directly and/or indirectly contacting any customers, clients, investors, and/or business associates of [Respondents] for the purpose of defaming the [Respondents], and shall likewise be enjoined from publishing, by any means, manner, or media, or otherwise making [any defamatory] public comments pertaining in any way to the [Respondents] or [their] business dealings." The injunction was to remain in effect throughout the pendency of the action, or until further orders of the court.

Hill subsequently moved for interlocutory relief in the Court of Appeals pursuant to CR 65.07. The Court of Appeals denied the motion, thereby upholding the

temporary injunction. Hill's petition for relief from the injunction is now before this Court pursuant to CR 65.09.

For the reasons set forth below, we hold that both the United States Constitution and the Kentucky Constitution forbid the issuance of an injunction to restrain allegedly defamatory speech until the falsity of the speech has been finally adjudicated in the trial court. Since there has been no final determination upon that issue in this case, we grant Hill's motion for relief, and vacate the circuit court's injunction as an impermissible prior restraint on speech.

## II. ANALYSIS UNDER THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION

As explained below, the temporary injunction entered by the circuit court is an improper prior restraint of speech under the First Amendment of the United States Constitution.

### A. Rule Against Prior Restraint of Speech

■ Since *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), the United States Supreme Court has recognized a tension between protection of reputation and protection of freedom of expression. Of course, the tension is strongest when there is a media defendant,[1] the subject matter is one of public interest, or the plaintiff is a public official or a public figure. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974); *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 105 S.Ct. 2939, 86 L.Ed.2d 593 (1985). "This case does not come close to implicating such weighty concerns. Nevertheless, it is clear that even where a

purely private matter between private parties is at issue, the defendant's freedom of expression is still implicated, and the First Amendment still affords some, though less substantial, protections." *Innes v. Howell Corp.*, 76 F.3d 702, 709 (6th Cir.1996) (citing *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)) (describing "an employee's false criticism of his employer on grounds not of public concern" as an example of less important but still-protected speech, cited with approval in *Dun & Bradstreet*, 472 U.S. at 760, 105 S.Ct. 2939).

■ Moreover, a fundamental principle which has emerged from the cases interpreting the First Amendment is that governmental units and courts may not impose a prior restraint on speech. *See Nebraska Press Assn. v. Stuart*, 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976) ("[P]rior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights"); *Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*, 413 U.S. 376, 93 S.Ct. 2553, 37 L.Ed.2d 669 (1973) (a prior restraint should not "swee[p]" any "more broadly than necessary"). As such, the Constitution forbids it. *See Carroll v. President and Comm'rs of Princess Anne*, 393 U.S. 175, 183–184, 89 S.Ct. 347, 21 L.Ed.2d 325 (1968) (An "order" issued in "the area of First Amendment rights" must be "precis[e]" and narrowly "tailored" to achieve the "pin-pointed objective" of the "needs of the case"); *see also Board of Airport Comm'rs of Los Angeles v. Jews for Jesus, Inc.*, 482 U.S. 569, 107 S.Ct. 2568, 96 L.Ed.2d 500 (1987) (regulation prohibiting "all 'First Amendment activi-

---

1. The involvement of a media defendant usually implicates freedom of the press as well as freedom of speech.

ties'" substantially overbroad); *Tory v. Cochran*, 544 U.S. 734, 738, 125 S.Ct. 2108, 161 L.Ed.2d 1042 (2005).

■ "Any prior restraint on expression comes to this Court with a 'heavy presumption' against its constitutional validity. Respondent[s] thus carr[y] a heavy burden of showing justification for the imposition of such a restraint." *Organization for a Better Austin v. Keefe*, 402 U.S. 415, 419, 91 S.Ct. 1575, 29 L.Ed.2d 1 (1971) (citations omitted).

■ The temporary injunction that prohibits Hill from making future statements about Respondents is a prior restraint on speech. Therefore, our review begins with a presumption that the injunction is invalid.

### B. The Traditional Rule Forbidding Injunctions Against Defamation

Aside from the First Amendment's heavy presumption against prior restraints, courts have long held that equity will not enjoin a libel. *See Nebraska Press Ass'n*, 427 U.S. at, 96 S.Ct. 2791; *Kramer v. Thompson*, 947 F.2d 666, 677–78 (3rd Cir.1991); *Community for Creative Non-Violence v. Pierce*, 814 F.2d 663, 672 (D.C.Cir.1987) ("The usual rule is that equity does not enjoin a libel or slander and that the only remedy for defamation is an action for damages."); *American Malting Co. v. Keitel*, 209 F. 351, 354 (2d Cir.1913) ("Equity will not restrain by injunction the threatened publication of a libel, as such, however great the injury to property may be. This is the universal rule in the United States...."); *Metropolitan Opera Ass'n, Inc. v. Local 100, Hotel Employees and Restaurant Employees International Union*, 239 F.3d 172, 177 (2d Cir.2001); 42 Am.Jur.2d, *Injunctions*, § 97 (2010) ("The general rule is that equity does not enjoin libel, rather, the only remedy for defamation is an action for damages, and there is

a heavy presumption that prior restraints on expression are unconstitutional."). (footnotes omitted)

"Although the rule has been severely criticized by legal scholars, and the courts have occasionally deviated therefrom in extreme cases or where a collateral ground of equity jurisdiction could be found, it appears to be clearly established by the large majority of the cases upon this question that equity will not grant an injunction against the publication of a personal libel or slander in the absence of some independent ground for the invocation of equitable jurisdiction." W.E. Shipley, Annotation, *Injunction as a Remedy Against Defamation of Person*, 47 A.L.R.2d 715 (1956).

■ The traditional rule against enjoining defamation is of long-standing effect, having been first established in eighteenth-century England. *Balboa Island Village Inn, Inc. v. Lemen*, 40 Cal.4th 1141, 57 Cal.Rptr.3d 320, 156 P.3d 339, 349 (2007) (discussing historical background of rule). As later discussed, while there appears to be an emerging modern trend toward permitting such injunctions upon a *final* adjudication that the speech under question is false, there nevertheless remain staunch advocates of the traditional rule that a prior restraint on speech is unacceptable under any circumstances. This position, along with supporting authorities, is defended by prominent constitutional law professor Erwin Chemerinsky in his law review article, *Injunctions in Defamation Cases*, 57 Syracuse L.Rev. 157 (2007).

Defenders of the traditional rule argue that we should not disturb the maxim that equity will not enjoin defamation, and that injunctions should never be allowed as a remedy in defamation cases. Professor Chemerinsky argues that even after a judicial determination that the speech at issue is false, "[t]he injunction means that a

person can only speak by going before the judge and getting permission. That is the very essence of a prior restraint." *Id.* at 163. He advocates that "[i]f history matters in interpreting the First Amendment, it could not be clearer: injunctions were not allowed as a remedy in defamation actions." *Id.* at 168. In his view, it is always the case that "damages, not injunctions, are the appropriate remedy in a defamation action," *id.* at 169, "even in the case of the "judgment proof defendant[.]" *Id.* at 170. Under the traditional rule, it is of no concern that the defendant may not be able to pay the damage award because "[c]ourts ... do not find that damages remedies are inadequate simply because the plaintiff cannot afford to pay them." *Id.* However, as next discussed, we find that this absolutist view is flawed.

### C. False, Defamatory Speech is Unprotected Speech

The rationale of the traditional rule is severely undercut by the countervailing view that defamatory speech is unguarded by the Constitution. Application of the rules relating to unprotected speech would compel the conclusion that the First Amendment is not even implicated in the case of false, defamatory speech, and therefore the Constitution poses no bar to any injunction restraining such speech.

"From 1791 to the present," the First Amendment has "permitted restrictions upon the content of speech in a few limited areas," and has never "include[d] a freedom to disregard these traditional limitations." *R.A.V. v. St. Paul,* 505 U.S. 377, 382–383, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992). These "historic and traditional categories long familiar to the bar," *Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.,* 502 U.S. 105, 127, 112 S.Ct. 501, 116 L.Ed.2d 476 (1991) (Kennedy, J., concurring in judgment), include

obscenity, *Roth v. United States,* 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957); defamation, *Beauharnais v. Illinois,* 343 U.S. 250, 72 S.Ct. 725, 96 L.Ed. 919 (1952); fraud, *Virginia Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748, 771, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976); incitement, *Brandenburg v. Ohio,* 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969) (per curiam); and speech integral to criminal conduct, *Giboney v. Empire Storage & Ice Co.,* 336 U.S. 490, 69 S.Ct. 684, 93 L.Ed. 834 (1949). These are "well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem." *Chaplinsky v. New Hampshire,* 315 U.S. 568, 571–572, 62 S.Ct. 766, 86 L.Ed. 1031 (1942); *U.S. v. Stevens,* — U.S. ——, 130 S.Ct. 1577, 1584, 176 L.Ed.2d 435 (2010).

Defamation's place on the list of unprotected speech is secure. As straightforwardly stated in *Beauharnais* almost sixty years ago, "[l]ibelous utterances [are not] within the area of constitutionally protected speech." *Beauharnais,* 343 U.S. at 267, 72 S.Ct. 725.

The traditional view, however, is also subject to fair criticism. What is or is not defamatory expression cannot often be summarily ascertained. A rush to enjoin distasteful, annoying, unpopular, or even damaging speech would often result in the suppression of truthful, legitimate discourse. Thus, given the flaws inherent in each of the foregoing views, we find it appropriate to consider a more modern and moderate analysis that recognizes the need to minimize the damage of unprotected, defamatory speech in a way that preserves the important constitutional values of free speech and due process.

### D. Modern Rule Permitting Injunctions Against Defamation

The recognition that false, defamatory speech is unprotected by the First Amendment has resulted in the development of a modern, superseding rule concerning the enjoining of defamatory speech. Under the modern rule, once a judge or jury has made a final determination that the speech at issue is defamatory, the speech determined to be false may be enjoined. The rule has been stated as follows:

> [T]he prohibition [against enjoining defamation] is not absolute, as there are exceptional cases in which a prior restraint is acceptable. For instance, an injunction would issue to prohibit a defendant from reiterating statements which had been found in current and prior proceedings to be false and libelous to prevent future injury to the libel plaintiff's personal reputation and business relations. An injunction restraining the publication of matter defaming a plaintiff personally [is] proper where there [is] no adequate remedy at law because of the recurrent nature of the defendant's invasions of the plaintiffs rights, the need for a multiplicity of actions to assert the plaintiffs rights, the imminent threat of continued emotional and physical trauma, and the difficulty of evaluating the injuries in monetary terms.

42 Am.Jur.2d, *Injunctions,* § 97 (2010) (footnotes omitted); *see also Pittsburgh Press Co.,* 413 U.S. 376, 93 S.Ct. 2553, 37 L.Ed.2d 669; *Metropolitan Opera Ass'n, Inc.,* 239 F.3d 172 (preliminary injunction against picketing and statements made in labor dispute reversed; equity will enjoin a libel only in extraordinary circumstances); *San Antonio Cmty. Hosp. v. Southern Calif. Dist. Council of Carpenters,* 125 F.3d 1230 (9th Cir.1997) (admitted falsity); *Kramer,* 947 F.2d 666 (injunction reversed; Pennsylvania law; extensive review of modern and historical authorities); *Lothschuetz v. Carpenter,* 898 F.2d 1200 (6th Cir.1990) (injunction permitted if prior adjudication of falsity; District of Columbia law); *Karhani v. Meijer,* 270 F.Supp.2d 926 (D.Mich.2003) (temporary restraining order enjoining libel and ethnic intimidation would be unconstitutional prior restraint); *Aguilar v. Avis Rent A Car System, Inc.,* 21 Cal.4th 121, 87 Cal.Rptr.2d 132, 980 P.2d 846 (1999) (narrowly drawn injunction prohibiting ethnic intimidation upheld); *Balboa Island Village Inn, Inc.,* 156 P.3d 339; *Sid Dillon Chevrolet–Oldsmobile–Pontiac, Inc. v. Sullivan,* 251 Neb. 722, 559 N.W.2d 740 (1997) (injunction denied; no prior adjudication of falsity); *O'Brien v. Univ. Cmty. Tenants Union, Inc.,* 42 Ohio St.2d 242, 327 N.E.2d 753 (1975) (injunction proper if prior judicial determination of falsity); *Nolan v. Campbell,* 13 Neb.App. 212, 690 N.W.2d 638 (2004) (narrowly drawn injunction proper where prior adjudication of falsity).

The emergence of the modern rule was anticipated by now U.S. District Judge William O. Bertelsman in his 1971 law review article, *Injunctions Against Speech and Writing: A Re-evaluation,* 59 Ky. L.J. 319 (1971). In the article, Judge Bertelsman suggested that the traditional view, which was firmly entrenched at the time, should be reevaluated, and that injunctions could be constitutionally granted in defamation and privacy cases under a standard similar to the rule as stated above. More recently, in *Lassiter v. Lassiter,* 456 F.Supp.2d 876, 882 (E.D.Ky.2006), Judge Bertelsman addressed the matter further.

In *Lassiter,* after discussing developments in the law since the publication of his 1971 article, Judge Bertelsman noted that this Court had not addressed the issue, but he surmised that when afforded

the opportunity to rule on the propriety of injunctive relief against defamation or invasion of privacy, we would, if we permitted an injunction at all, do so only under the following standards:

    1. That the injunction be clearly and narrowly drawn so as not to prohibit protected expression;

    2. That the falsity or illegality of the expression be finally adjudicated prior to the issuance of the injunction;

    3. That the falsity or illegality be established by at least clear and convincing evidence;

    4. That the enjoined expression not be political in nature, or otherwise protected by the First Amendment, or on a subject so imbued with the public interest that its publication outweighs the social policy in the protection of reputation and privacy; and

    5. That the usual equitable requirements for an injunction be met. *Id.* at 884.

We generally agree with the formulation suggested by Judge Bertelsman, and adopt all of it except the requirement that the falsity of the speech at issue be proven by clear and convincing evidence.[2] While Judge Bertelsman proffers a commendable suggestion advancing the cause of freedom of speech, the rule as it has developed in other jurisdictions has not required an elevated standard of proof, and we believe that the well-established preponderance of evidence standard normally used in civil cases strikes the proper balance between the traditional rule that defamation cannot be enjoined at all and the recognition that false, defamatory speech is unprotected speech.

■ Thus, as a matter of first impression, we adopt the modern rule that defamatory speech may be enjoined only after the trial court's final determination by a preponderance of the evidence that the speech at issue is, in fact, false, and only then upon the condition that the injunction be narrowly tailored to limit the prohibited speech to that which has been judicially determined to be false.

### E. Application of Modern Rule to this Case

Application of the modern rule that defamatory speech may be enjoined only following a final determination that the speech is false compels the result that Hill be granted the relief requested in his CR 65.09 motion, and that the injunction entered by the circuit court be set aside.

We first note that the cases cited by the Respondents in support of the injunction, *Lothschuetz,* 898 F.2d 1200 and *In re Davis,* 347 B.R. 607 (W.D.Ky.2006), follow the modern rule as described above, and provide no support for the temporary injunction.

In *Lothschuetz,* the defendants (Carpenter and Carpenter Radio Co.), among other things, sent correspondence to agencies and politicians alleging that co-plaintiffs (Lothschuetz, Carolyn C. Hill, and United Telecommunications, Inc.) had violated conflict-of-interest laws, had ignored ethical responsibilities, and had stolen defendants' communications equipment. The plaintiffs filed an action alleging, among other things, libel. Following discovery violations, the trial court entered a default judgment against both defendants, *thereby finally adjudicating the complained of statements to be false. Id.* at 1204. *See*

---

**2.** We emphasize at this point that the discussion herein excludes injunctions that may relate to media defendants, public figures, and matters of public interest. An entirely separate set of rules is implicated when the litigation involves these parties and issues. *See New York Times v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 and its progeny.

*Davis v. Tuggle's Adm'r,* 297 Ky. 376, 178 S.W.2d 979 (1944) (The fact that no defense was offered in first suit does not affect conclusiveness of judgment in subsequent litigation between same parties over same subject matter, since rule as to conclusiveness of judgment applies to a judgment by default or decree *pro confesso* ). The trial court awarded the plaintiffs nominal damages, but refused their request for an injunction preventing future defamatory comments by the defendants.

On appeal, the Sixth Circuit held "[I]n view of Carpenter's frequent and continuing defamatory statements, an injunction is necessary to prevent future injury to Carolyn Hill's personal reputation and business relations. [citations omitted], ... [but] would limit the application of such injunction *to the statements which have been found in this and prior proceedings to be false and libelous.*" *Lothschuetz,* 898 F.2d at 1208–1209 (Wellford, Judge, concurring in part and dissenting in part) [3] (emphasis added).

Thus, in *Lothschuetz,* unlike in the present case, there had been a definitive adjudication (albeit by default judgment) that the defendants' public accusations were false, and the injunction was narrowly confined to those statements proven to be false as a matter of res judicata.

Similarly, in *In re Davis,* 347 B.R. 607, the Davises opened a webpage that contained material suggesting that Kenneth Mitan and his family, including Frank Mitan, were con artists, and that one should avoid doing business with them. The Bankruptcy Court *found* for the Davises on all claims *except Frank's claim for libel.*

The court awarded Frank Mitan nominal damages, ordered any reference to Frank to be stricken from the Davises' website, and enjoined the Davises from operating the offensive website or any similar website for the duration of their Chapter 13 plan. *Id.* at 610.

Upon review, the federal District Court recognized this country's "rich tradition of freedom of speech" and that "[a]ccordingly, the courts must tread lightly when enjoining speech." *Id.* at 612–613. The court nevertheless concluded that "[t]he freedom of speech is not an absolute right, and a court may use its equitable power to protect an entity from defamatory speech where there is no adequate remedy at law." *Id.* at 613 (citing *Lothschuetz,* 898 F.2d 1200, and *Pittsburgh Press Co.,* 413 U.S. 376, 93 S.Ct. 2553, 37 L.Ed.2d 669). The District Court then held:

> The Davises do not object to the order compelling them to remove all reference to Frank Mitan so much as they object to the enjoining of their entire website for the duration of their Chapter 13 plan, a period that could be as long as five years. 11 U.S.C. § 1322. The court agrees that the scope of this injunction is overly broad. While Frank Mitan may be entitled to injunctive relief to protect him from future defamation, this relief does not require the Davises' complete silence over a multiyear period. Although the Bankruptcy Court's description of the website as a "scandal sheet" may be apt, *there has been no finding that it is defamatory with regard to anybody but Frank.* On remand, the Bankruptcy Court is to reconsider the scope of its injunction. To

---

**3.** Judge Wellford's dissent on this point was joined by Judge Hull, and was thus the majority opinion upon the issue. Judge Guy, who wrote the lead opinion, agreed with the District Court that the injunction requested by the plaintiffs was an unwarranted prior restraint on freedom of speech, citing *Community for Creative Non–Violence,* 814 F.2d at 672 ("[t]he usual rule is that equity does not enjoin a libel or slander and that the only remedy for defamation is an action for damages.' ").

the extent that Frank still requires protection from defamation, the Court is to craft a solution that provides that protection *without unduly trampling on the Davises' right to publish.*

*Id.* (emphasis added).

Accordingly, in *Davis,* there had been a final adjudication that the Davises' statements concerning Frank Mitan were false, unlike our present case in which there has been no final adjudication of the falsity of Hill's speech. Further, *Davis* narrowly tailored the remedy to restrain only such speech that had been finally adjudicated as false.

In summary, neither *Lothschuetz* nor *Davis* supports, as suggested by the Respondents, a broad authority for courts to enjoin allegedly defamatory speech prior to final adjudication that the speech is false. Thus, *Lothschuetz* and *Davis* provide no support for the temporary injunction entered in this case.

■ Upon application of the modern rule as described above to the circumstances of the present case, we need go no further than to note that the speech alleged to be false and defamatory by the Respondents has not been finally adjudicated to be, in fact, false.[4] Only upon such a determination could the speech be ascertained to be constitutionally unprotected, and therefore subject to injunction against future repetition. We are mindful that the

rule announced herein delays the availability of injunctive relief during the time it takes to litigate the issue. Thus, while the rule may temporarily delay relief for those ultimately found to be innocent victims of slander and libel, it prevents the unwarranted suppression of speech of those who are ultimately shown to have committed no defamation, and thereby protects important constitutional values. We trust that our trial courts will use their discretion to balance those competing interests by bringing such cases to final adjudication in a reasonably timely manner.

■ Accordingly, we grant the relief requested by Movant in his CR 65.09 motion, and dissolve the circuit court's injunction. We also hold, consistent with our determination herein, that upon a final adjudication of the falsity of any statements made by Hill, a narrowly tailored injunction may be issued, covering only those specific statements found by a jury or by a judge in a bench trial, to be false.[5]

## III. ANALYSIS UNDER THE SECTION ONE AND SECTION EIGHT OF THE KENTUCKY CONSTITUTION

■ Independently of the First Amendment analysis set forth above, we also conclude that the injunction is in violation of the free speech provisions set forth in Section 8 and Section 1(4) of our Kentucky Constitution. We begin by noting that

---

4. While there may be indicia of falsity in the record before us, nevertheless, it is possible that, ultimately, it may be determined that Hill's speech, or part of it, is truthful, and he is aiding the public interest by exposing questionable investment solicitations by Respondents.

5. As previously noted, the circuit court's order enjoined Hill "from directly and/or indirectly contacting any customers, clients, investors, and/or business associates of Plaintiffs for the purpose of defaming the

Plaintiff[s], and shall likewise be enjoined from publishing, by any means, manner, or media, or otherwise making [any defamatory] public comments pertaining in any way to the Plaintiffs or Plaintiffs' business dealings." This wide-sweeping language could well serve as a model of an injunction that *does not* meet the narrow tailoring requirements necessitated by the rule as explained. Thus, in any event, based upon its wording, it would be necessary to vacate the injunction as impermissibly overly-broad.

there is no authority addressing the specific issue before us under the Kentucky Constitution, and so our references are principally limited to the text of the relevant provisions of the Kentucky Constitution, and the 1890 Constitutional Debates addressing the drafters' understanding of their meaning.

Section 1(4) of the Kentucky Constitution provides as follows: "All men are, by nature, free and equal, and have certain inherent and inalienable rights, among which may be reckoned: ... Fourth: The right of freely communicating their thoughts and opinions."

Section 8, titled "Freedom of speech and of the press," provides as follows: "Printing presses shall be free to every person who undertakes to examine the proceedings of the General Assembly or any branch of government, and no law shall ever be made to restrain the right thereof. *Every person may freely and fully speak, write and print on any subject, being responsible for the abuse of that liberty.*" (emphasis added).

Read literally, the provision would appear to prohibit *any* restriction of speech on any subject, though the speaker would thereafter be subject to any criminal or civil consequences available through our court system. Thus, as relevant to the present case, a reasonable restatement of the second sentence of Section 8 may well be as follows: "No prior restraint against speech shall issue against a speaker by injunction, but if the speaker goes too far, he must thereafter answer civilly or criminally in the Courts of the Commonwealth." Thus, Section 8 could reasonably be interpreted as supporting the traditional rule that defamatory speech may not be enjoined at all. In any event, the provision does not support the Respondents' position that courts may broadly enjoin defamatory speech. The issue, then, is whether speak-

ers, such as Hill, may, under Section 8, have protections above and beyond the floor established by the First Amendment.

While the unmistakable clarity of Section 8 may compel, in certain instances, greater protection to speech than the First Amendment, at the same time, in interpreting the provision, it must also be recognized, as previously discussed, that some categories of speech are undeserving of any constitutional protection at all, including false, defamatory speech. In this vein, we conclude that Section 8 may be interpreted consistently with the modern rule that defamatory speech may be enjoined following a judicial determination of falsity.

Since the late 1500's the common law has afforded a cause of action for damage to a person's reputation by the publication of false and defamatory statements, not only to allow an individual to vindicate his good name, but also to allow him to obtain redress for harm caused by the statements. *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990). Thus, there is a long-standing cause of action, predating our 1891 Constitution, permitting a plaintiff to seek remedy through the courts against those spreading false information about him. It follows that Section 8 must be interpreted with this principle in mind, and with the recognition that its drafters understood this limitation on speech. The debates themselves reflected a strong sentiment against the tolerance of defamation. For example, in his discussion of Section 8 before the Convention, Delegate C.J. Bronston, of Lexington, in the colorful language of the times, orates as follows:

... "Is libel worse than murder?" I answer the gentleman, in the presence of this intelligent audience, yes, it is worse than murder. You may kill a man and put him away beneath the sod, and there, over his mouldering body, may

grow the green grass, and his children and grandchildren may come about and shed a tear; but take from him his reputation, and he is a living corpse walking among men—a stench in their nostrils—a being subject to the scorn of the human race. Worse than murder; because the man who strikes down his fellow-man invokes at once the anger and the determination of every human being to prosecute him; but let him, by the insidious means of the press, strike down a man's character, and the people have their prurient taste gratified for a moment, and then forget, as it were, and leave the poor wretch to wander degraded throughout this life.

1 1890 Kentucky Constitutional Convention Debates, 543.

As previously discussed, false defamatory speech enjoys no constitutional protections under the First Amendment. Section 8 should be similarly construed, and this construction, as reflected in the comments of Delegate Bronston, would be consistent with the sentiments of its drafters. False, defamatory speech advances no public interest, whereas there is an important right of long-standing recognition allowing a citizen redress, through the courts, of protection against false, defamatory statements against his good name and reputation.

Accordingly, we conclude a reasonable interpretation of the phrase *"being responsible* for the abuse of that liberty [to speak freely]" (emphasis added) would, in addition to monetary damages, also include a speaker's "being responsible" to respect, and abide by, a final determination by a judge or jury that his defamatory speech is false. This obligation of "being responsible" would seem to include a duty to re-frain from repetition of speech adjudicated to be false, and, it follows, would also include the responsibility to abide by a narrowly tailored injunction against repetition of the false speech.

As such, Section 8 may be interpreted consistently with authorizing an injunction once speech has been finally adjudicated as false. We so interpret the provision. *See Balboa Island Village Inn, Inc.,* 156 P.3d 339, (Interpreting a California constitutional provision similar to Section 8 as permitting an injunction against defamatory speech upon an adjudication of falsity.[6]).

In summary, consistent with the modern rule, we construe Section 8 as permitting an injunction against false, defamatory speech, but only upon a final judicial determination that the speech is false. *See* CR 65.01. "A party may obtain injunctive relief in the circuit court by permanent injunction in a *final* judgment." (emphasis added.) Until such determination of falsity, however, the provision is best interpreted as proscribing a preliminary restraint upon the alleged defamatory speech. We hold that neither a restraining order under CR 65.03, nor a temporary injunction under CR 65.04 may be used to enjoin allegedly defamatory speech.

### CONCLUSION

For the foregoing reasons we grant Hill's motion for CR 65.09 relief, and vacate the temporary injunction. If, however, upon final adjudication in the trial court, specific and particular statements alleged to have been made by Hill are found to be false, the trial court may then enter a narrowly tailored injunction to prevent further dissemination of the false and defamatory statements.

---

**6.** Article I, section 2, subdivision (a) of the California Constitution states: "Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right."

All sitting. MINTON, C.J., ABRAMSON, NOBLE, SCHRODER and SCOTT, JJ., concur. CUNNINGHAM, J., concurs in result only by separate opinion.

CUNNINGHAM, J., Concurring in Result Only:

"Who steals my purse steals trash; 'tis something, nothing. 'Twas mine, 'tis his, and has been a slave to thousands. But he that filches from me my good name robs me of that which not enriches him, and makes me poor indeed."

It is precisely for this reason, so cogently expressed by Shakespeare, that our law does not protect defamation of character. John Burness and Petrotech were in the process of being defamed and maligned. They have resorted to the protection of the court—not the vindication of the street—to protect their good names.

Therefore, while I concur with the excellent writing and rationale of Justice Venters, I wish to make clear that, in my view, the courts are still able to protect one from perpetual vilification.

I write to express my concern about the term, "final adjudication," used by the majority. It would have been sufficient, in my opinion, if the trial court, in this case, had conducted a full blown hearing and had entered findings on the falsity of the statements, even though other claims might still be pending. To that extent, there would not have been a "final adjudication" of the case, but there would have been one on the falsity of the statements. To my mind, that would have been sufficient "adjudication" to have protected the constitutional rights of the declarant as well as the reputation of the person aggrieved. Such was not done here and, thus, I concur in result.

I am heartened by the words of Justice Venters that "upon a final adjudication of the falsity of any statements made by Hill, a narrowly tailored injunction may be issued...." It is my opinion that a temporary injunction may still be obtained if the trial judge holds a hearing and makes a finding that the statements are, in fact, false. This would allow a temporary injunction to be in place to protect the reputation of the complainant as the lawsuit proceeds to a conclusion.

With the expression of this view, I concur in result only.