**John Michael WEDDING, Appellant,**

**v.**

**Heather Lynn HARMON, Appellee.**

**NO. 2015–CA–000195–MR**

Court of Appeals of Kentucky.

RENDERED: APRIL 15, 2016; 10:00 A.M.

MODIFIED: APRIL 22, 2016

---

33. *Miller v. Commonwealth*, 77 S.W.3d 566, 576 (Ky.2002).

34. *Harp v. Commonwealth*, 266 S.W.3d 813, 818 (Ky.2008).

35. *Id.*

Brief for Appellant: B. Mark Mulloy, Louisville, Kentucky.

Brief for Appellee: Melanie Straw–Boone, Louisville, Kentucky.

BEFORE: KRAMER, D. LAMBERT, AND STUMBO, JUDGES.

*OPINION*

KRAMER, JUDGE:

John Michael Wedding (Father) appeals an order of the Jefferson Family Court granting Heather Lynn Harmon's (Mother) motion to prohibit Father from harassing her by copying and forwarding routine co-parenting emails to individuals within the parties' local community and from sending mass emails to the parties' friends, family and other members of their community regarding the parties' dissolution, custody proceedings and co-parenting. Father's sole contention on appeal is that the order is an unconstitutional infringement on his speech. After careful review, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

The parties, who married September 27, 2003, have two children together. They were divorced on August 27, 2013, and were awarded joint custody with a shared parenting schedule that divided parenting time equally. Pursuant to a separate visitation order of the same date, the mode of communication between the parties was limited to email. The order stated in pertinent part:

The parties shall continue to communicate regarding the children by e-mail only. The content of the e-mails shall

be restricted to factual information specifically regarding the children, the parenting schedule, and parenting issues only.

Subsequently on May 28, 2014, Mother moved the family court to prohibit the parties from sharing their co-parenting email communications with third parties after Father began forwarding and copying the emails to their oldest child's teacher, the child's classmates' parents, and members of Mother's family. In her motion Mother alleged Father's conduct was destructive to the co-parenting process and embarrassing to the parties and their children. The motion was called on June 2, 2014. After argument by counsel, the family court admonished Father. However, the court declined to rule on Mother's motion, stating:

Mr. Wedding, I will direct my comments to you sir. This goes beyond bad form. It is a form of harassment and intimidation. It does embarrass the children. It makes the other person copied uncomfortable. The person who will look bad for sending this email is not Dr. Harmon, it is you. It puts other people uncomfortably in the middle of the friction between you and your ex-wife and they don't want to hear that. If I get continued behavior like that I will reconsider the Motion. These are just out of line.

Father failed to heed the family court's admonishment, copying the oldest child's teacher on a September 24, 2014 email to Mother, explaining:

I've copied Mrs. English on this email so she will know that the blue folder will be kept in [our daughter's] backpack. Mrs. English, this is done because Heather chooses to communicate via email only and even though I disagree with it, I will oblige until hopefully addressed and changed through our court system. Heather, thank you for communicating and meeting [me and our daughter] at her doctor's appointment last Thursday morning. I'm glad that you and I didn't have to email our dialogue back and forth while we were both alone in the same small exam room with [our daughter]. That might have been a little weird.

On a separate occasion Father sent an email to hundreds of individuals,[1] including teachers and school administrators, parents of classmates, and others within the parties' community, wherein he recounted the pain, misery and struggle of his divorce. The email implored the recipients to talk to both of the parties about their divorce and allegations of domestic violence[2] so the recipients could "form their own opinion based on facts" and "help [the parties] heal in [their] own way and help hold [the parties] accountable for [their] own actions."

Mother subsequently filed another motion, alleging Father's conduct was malicious harassment intended to embarrass, coerce, and hurt Mother. She also alleged it was harmful to her professional reputation, destructive to the co-parenting process and embarrassing the children, damaging their relationship with friends, friends' parents and teachers. The motion was called on November 26, 2014, and the family court heard testimony from Mother,

---

1. Father was unable to produce a list of recipients, recall whether the email was sent to over 500 people, or remember whether the recipients included patients, employees, or partners of Mother's ophthalmology practice.

2. Mother filed a petition for emergency protective order immediately preceding her petition for dissolution. We affirmed the family court's denial of a domestic violence order in *Harmon v. Wedding*, 2012–CA–000964–ME, 2013 WL 2150681 (Ky.App. May 17, 2013).

Father, and Mark Parish, a licensed marriage and family therapist who had counseled Mother through the divorce and co-parenting process.

Finding Father's continued conduct would ostracize the parties' children and jeopardize Mother's business, the family court granted Mother's motion and ordered the parties not to forward to others any private email communications between themselves and not to email others with comments regarding the interaction of the parties, the communication between the parties, the details of the parties' divorce, or any arrangements to be made through the parties. Concurrently, the family court held Father in contempt after he failed to timely return the children on the day they were scheduled to leave on vacation with Mother. Father now appeals.

### STANDARD OF REVIEW

At its essence, the focus of this appeal is upon the propriety of court-ordered injunctive relief. Our standard of review is set forth in CR [3] 52.01, which states:

> [I]n granting or refusing temporary injunctions or permanent injunctions the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action.... Findings of fact, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses....

See *Rogers v. Lexington–Fayette Urban County Government*, 175 S.W.3d 569, 571 (Ky.2005). To determine if findings are clearly erroneous we look to see if they are without adequate evidentiary support or occasioned by erroneous application of the law. *Oakwood Mobile Homes, Inc. v. Sprowls*, 82 S.W.3d 193 (Ky.2002).

Domestic relations cases allow broad discretion to the trial court which hears the cases without a jury. The legal standards a judge must apply in these cases demonstrate the need for such discretion ... Clearly, the court must make its judgment based on how it perceives the effect of the evidence on the question to be resolved. And, as we have often said, due deference must be given to the judgment of the court that hears the evidence, knows the facts of the case, and can judge the credibility of the witnesses.

*McFelia v. McFelia*, 406 S.W.3d 838, 839–40 (Ky.2013).

■ Similarly, "injunctive relief is basically addressed to the sound discretion of the trial court. Unless a trial court has abused that discretion, this Court has no power to set aside the order below." *Maupin v. Stansbury*, 575 S.W.2d 695, 697–98 (Ky.App.1978) (citations omitted).

### ANALYSIS

Father argues the family court's order is unconstitutional in that it infringes on his right to freedom of speech under the First Amendment of the United States Constitution and Section 8 of the Kentucky Constitution. We affirm the order of the family court because: (1) Father's emails were constitutionally unprotected conduct intended to harass, annoy or alarm Mother; (2) the injunction was narrowly drawn to proscribe Father's unprotected conduct; and (3) the best interest of the children are supported by the family court's limitation on Father's speech.

■ "At the heart of the First Amendment is the recognition of the fundamental importance of the free flow of ideas and opinions on matters of public interest and concern." *Hustler Magazine*,

---

**3.** Kentucky Rules of Civil Procedure.

*Inc. v. Falwell,* 485 U.S. 46, 50, 108 S.Ct. 876, 879, 99 L.Ed.2d 41 (1988). Very few restrictions upon the content of speech are permitted. *R.A.V. v. St. Paul,* 505 U.S. 377, 382–83, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992). "The United States Supreme Court has recognized a tension between protection of reputation and protection of freedom of expression, which is the strongest when there is a media defendant, the subject matter is one of public interest or the plaintiff is a public official or a public figure." *Hill · v. Petrotech Resources Corp.,* 325 S.W.3d 302, 305 (Ky.2010) (citations omitted). "This case does not come close to implicating such weighty concerns. Nevertheless, it is clear that even where a purely private matter between private parties is at issue, the defendant's freedom of expression is still implicated and the First Amendment still affords some, though less substantial, protections." *Id.* (citing *Innes v. Howell Corp.,* 76 F.3d 702, 709 (6th Cir. 1996)).

■ Yet "[o]ur freedom of speech does not include freedom to convey messages when, where, and how one chooses. That right must be adjusted to the rights of others." *Yates v. Commonwealth,* 753 S.W.2d 874 (Ky.App.1988) (citing *Breard v. Alexandria,* 341 U.S. 622, 71 S.Ct. 920, 95 L.Ed. 1233 (1951)); *see also* KRS 535.050 (criminalizing communication that is intended to harass, annoy or alarm another person). Accordingly, various kinds of communication are subject to regulation or outright preclusion by governmental action when they run afoul of established principals of law or policy. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982).

■ Here, Father construes the family court's order as a prior restraint [4] on his speech, and relies on *Hill v. Petrotech Resources Corp.,* 325 S.W.3d 302 (Ky. 2010), to support his argument. In *Hill* the defendant contacted plaintiff's business associates and investors, called plaintiff a crook and scam artist, and published similar statements on industry web sites. Plaintiff filed suit alleging defendant's speech was defamatory and sought an injunction on that basis. Without holding a hearing to determine the truth or falsity of defendant's speech, the trial court concluded defendant's speech was defamatory and entered an order enjoining defendant from contacting plaintiff's customers, clients, investors or business associates, and from publishing any defamatory comments related to plaintiff's business.

We denied the defendant's motion for interlocutory relief, but the Kentucky Supreme Court accepted discretionary review and as a matter of first impression, adopted a modern approach to analyzing claims for injunctive relief against defamatory statements or invasions of privacy. *Id.* at 309; *see Lassiter v. Lassiter,* 456 F.Supp.2d 876 (E.D.Ky.2006) *aff'd,* 280 Fed.Appx. 503 (6th Cir. 2008). It held that when a court is afforded the opportunity to rule on the propriety of such injunctions, it would do so only under the following standard:

1. That the injunction be clearly and narrowly drawn so as not to prohibit protected expression;

2. That the falsity or illegality of the expression be finally adjudicated prior to the issuance of the injunction;

3. That the falsity or illegality be established by at least a preponderance of evidence;

4. That the enjoined expression not be political in nature, or otherwise protected by the First Amendment, or on a heavy presumption against its constitutional validity. *Hill,* 325 S.W.3d at 302.

---

4. An injunction that prohibits a party from making future statements about another party is a prior restraint on speech which carries a

subject so imbued with the public interest that its publication outweighs the social policy in the protection of reputation and privacy; and

5. That the usual equitable requirements for an injunction be met.

*Id.* at 309 (citing *Lassiter*, 456 F.Supp.2d at 882). Applying this modern standard to the circumstances in *Hill*, our Supreme Court found the trial court's order was an unconstitutional prior restraint because the order enjoined all defamatory speech and was thus overbroad, and because the trial court failed to hold a hearing and make a final adjudication of whether the defendant's speech was constitutionally protected before enjoining the speech.

We disagree with Father's analogy to *Hill*. Although the enjoined speech in both *Hill* and the instant case affect a party's reputation, there are significant factual and procedural distinctions between the two cases. In contrast to *Hill*—where the trial court's order proscribed *all speech* that was defamatory—here the court's restrictions were narrowly drawn. And unlike *Hill*, the family court held a hearing before determining Father's conduct was unprotected. Most importantly, Father's speech also affected the children's interests, a concern upon which our law places perhaps the greatest emphasis.[5]

While neither party's brief applies the modern standard set forth in *Hill* to the circumstances of this case, our application leads us to conclude that the family court's order enjoining Father's harassing conduct was not an abuse of discretion. First, the injunction was narrowly tailored to prohib-

it only unprotected speech. Second, because the court held a hearing there was a final adjudication prior to issuance of the injunction. Third, substantial evidence supports the family court's determination the enjoined speech was unprotected.[6] Fourth, Father's speech was not subject to heightened scrutiny because of the nature of the speech. And finally, the balance of equities weigh in favor of enjoining Father's conduct because Mother has a right to be left alone; Father's conduct runs counter to the best interests of his children; the Commonwealth has a compelling interest in protecting its youngest citizens; and the public has a limited interest in receiving the content of Father's communications or receiving it by email. Plainly, Father's interference with Mother's privacy and his children's well being outweighs his absolute exercise of his right of free speech.

## CONCLUSION

While the family court's order restricts Father's ability to convey specific, private content through email, its conclusion that Father's speech was unprotected was supported by substantial evidence of record and its order was consistent with the modern approach adopted in *Hill*. Accordingly, we find no abuse of discretion and AFFIRM the order of the family court.

ALL CONCUR.

---

5. The Court is not required to wait until the children have already been harmed before giving consideration to the conduct causing the harm. *Krug v. Krug*, 647 S.W.2d 790, 793 (Ky.1983) (citing *S. v. S.*, 608 S.W.2d 64 (Ky. App.1980)).

6. Testimony at the hearing indicated Father was dissatisfied with the restrictions on com-

munication between Father and Mother and that his conduct was an attempt to coerce Mother to communicate with him through forms other than email. Moreover, the circumstances of his concurrent contempt of court make his harassing course of conduct clear.