IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 07, 2015 Session


**JAMES C. LODEN, M.D., P.C., d/b/a LODEN VISION CENTERS, and
JAMES C. LODEN, M.D., Individually v. GERALD MICHAEL SCHMIDT**

**Appeal from the Circuit Court for Davidson County
No. 10C1034      Thomas W. Brothers, Judge[1]**

---

**No. M2014-01284-COA-R3-CV – Filed April 23, 2015**

---

Doctor filed this lawsuit against a former patient, alleging malicious prosecution, tortious interference, defamation, and intentional infliction of emotional distress. After the patient refused to respond to discovery, the trial court eventually entered an order striking the patient's answer and entering a default judgment against the patient. The trial court later awarded the doctor nominal damages and a permanent injunction. Affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded.**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the Court, in which ARNOLD B. GOLDIN, J., and KENNY ARMSTRONG, J., joined.

Gerald Michael Schmidt, Franklin, Tennessee, Pro se.

James Bryan Lewis, Nashville, Tennessee, for the appellee, James C. Loden, M.D., P.C., d/b/a Loden Vision Centers, and James C. Loden, M.D., Individually.


**OPINION**

---

[1] Other than the final judgment, all orders at issue in this case were entered by Judge Amanda McClendon.

## Background

Plaintiff/Appellee Dr. James C. Loden ("Dr. Loden") performed LASIK eye surgery[2] on Gerald Schmidt ("Mr. Schmidt") on May 18, 2007 at Dr. Loden's clinic, Loden Vision Center. Mr. Schmidt contends this caused corneal neuropathy and vitreous floaters in his eyes. Mr. Schmidt filed two malpractice actions against Dr. Loden, but both were eventually dismissed.[3]

In 2008 and 2009, Mr. Schmidt allegedly began posting on Dr. Loden's Facebook page and other internet sites "warning others about his negative experiences" with his LASIK procedure performed by Dr. Loden. In these posts, Mr. Schmidt allegedly claimed that Dr. Loden acted improperly with regard to Mr. Schmidt and other patients. Eventually, on March 19, 2010, Dr. Loden, individually and d/b/a Loden Vision Center, filed a complaint against Mr. Schmidt for malicious prosecution. Dr. Loden granted Mr. Schmidt an extension in which to file an answer, allowing until approximately May 15, 2010. Counsel for Mr. Schmidt filed a notice of appearance on April 29, 2010; however, Mr. Schmidt failed to file an answer by May 15, 2010.

On July 28, 2010, Dr. Loden filed an amended complaint, asserting additional claims for tortious interference, defamation, and intentional infliction of emotional distress. The amended complaint alleged that Mr. Schmidt engaged in a pattern of defamatory, harassing, and sometimes threatening behavior against Dr. Loden and the staff at Loden Vision Center, which negatively affected Dr. Loden's business and made Dr. Loden and his staff fearful of their safety. On the same day, Dr. Loden filed a request for a temporary injunction preventing Mr. Schmidt from making defamatory comments about Dr. Loden. Mr. Schmidt responded in opposition to the motion for temporary injunction on August 3, 2010. The trial court nevertheless granted the temporary injunction on August 9, 2010.

On January 12, 2011, Mr. Schmidt's counsel was permitted to withdraw from the case.[4] On February 25, 2011, Mr. Schmidt, acting pro se, filed an answer to the amended

---

[2] "LASIK" is defined as "[e]ye surgery in which the surface of the cornea is reshaped by a laser, performed to correct certain refractive disorders." *The American Heritage College Dictionary* 782 (4th ed. 2002).

[3] Mr. Schmidt voluntarily dismissed his first lawsuit. Mr. Schmidt's second lawsuit was dismissed with prejudice for failure to comply with the requirements of the Tennessee Medical Malpractice Act (now titled the Tennessee Healthcare Liability Act).

[4] After the withdrawal of his counsel, Mr. Schmidt proceeded pro se in the trial court. He is also self-represented on appeal.

complaint, denying the material allegations contained therein. In addition, Mr. Schmidt asserted that his statements were true, were not communicated with malice, and were protected by the First Amendment of the United States Constitution. The case languished for several years; the parties were ordered to attend several status conferences, and the trial court entered numerous case management orders. Mr. Schmidt also filed a motion to dismiss Dr. Loden's complaint, which was denied by the trial court over a year after the motion was filed.

Discovery disputes are at the center of this appeal. First, on November 20, 2013, Dr. Loden filed a motion to compel Mr. Schmidt to answer a question propounded to Mr. Schmidt during his deposition but which Mr. Schmidt refused to answer.[5] The trial court granted Dr. Loden's motion to compel on December 20, 2013 and awarded Dr. Loden $200.00 in discretionary costs as a sanction. Soon thereafter, on January 8, 2014, Dr. Loden filed a second motion for sanctions against Mr. Schmidt for failure to answer interrogatories or respond to requests for production of documents. Mr. Schmidt subsequently filed a motion to be permitted additional time to respond to discovery. On February 14, 2014, however, the trial court entered an order finding that Mr. Schmidt was timely and properly notified of his inadequate discovery responses on November 20, 2013, and that he willfully failed to correct his discovery responses since that date. Accordingly, the trial court awarded Dr. Loden $1,600.00 in attorney's fees as a sanction. The trial court further ordered that Mr. Schmidt should answer all outstanding discovery requests within thirty days of the entry of its order.

Thirty days passed with no response from Mr. Schmidt. Accordingly, on April 7, 2014, Dr. Loden filed a third motion for sanctions against Mr. Schmidt, indicating that Mr. Schmidt had neither responded to discovery as ordered nor paid the two prior awards of sanctions within the time frame set by the trial court. The motion requested that the trial court strike Mr. Schmidt's answer as a discovery sanction pursuant to Rule 37.02 of the Tennessee Rules of Civil Procedure, or, in the alternative, set a show cause hearing as to why Mr. Schmidt should not be held in contempt. Dr. Loden also requested attorney's fees associated with the filing of his motion.

The trial court held a hearing on Dr. Loden's motion for sanctions on April 25, 2014. The trial court entered a written order granting Dr. Loden's motion on May 21, 2014. In the order, the trial court found:

---

[5] The question concerned Mr. Schmidt's allegation that Dr. Loden falsified the medical records of two patients. When asked to disclose the names of those persons, Mr. Schmidt answered that he was not "going to name names."

3

1. [Mr.] Schmidt, failed to file a response to [Dr. Loden's] Motion as required by Davidson County Local Rules of Practice 26.04.[6] The [c]ourt finds [Mr. Schmidt] has been advised by this [c]ourt previously concerning this Local Rule, and [Mr. Schmidt] has continued to ignore Local Rule 26.04 concerning timely responses to motions.

2. The [c]ourt finds the [Mr. Schmidt] has consistently ignored the Tennessee Rules of Civil Procedure as they relate to discovery, and this [c]ourt has previously sanctioned [Mr. Schmidt] on December 20, 2013 and February 14, 2014 as a result of non-compliance with discovery.

3. The [c]ourt finds the [Mr. Schmidt] has purposely ignored this [c]ourt's order of February 14, 2014 to answer Plaintiffs' discovery request and has been in direct violation of this [c]ourt's order for over two (2) months. The [c]ourt finds the Defendant was advised by Special Master Mary Ashley Nichols on April 7, 2014 to comply with the [c]ourt's order of February 14, 2014, and [Mr. Schmidt] purposely [sic] continued to ignore and violate this [c]ourt's order.

4. Based on [Mr. Schmidt's] consistent and willful pattern of ignoring this [c]ourt's orders as it relates to the discovery process in this ease, as well as [Mr. Schmidt's] repeated and willful conduct of disregarding Local Rule 26.04, the [c]ourt finds the [Dr. Loden's] Motion shall be granted and the [Mr. Schmidt's] Answer struck from the record. [Dr. Loden] shall be granted a default judgment and a hearing for damages shall be held on June 3, 2014 at 9:00 a.m.

5. [Dr. Loden's] attorney . . . shall be awarded One Thousand Two Hundred Dollars ($1,200.00) in attorney's fees as a sanction against [Mr.] Schmidt, which fees are supported by the Affidavit attached to this Order. The [c]ourt hereby finds that the $1,200.00 award of attorney's fees is a judgment for which

---

[6] Davidson County Local Rule of Practice 26.04(d) states that if a motion is opposed:

[A] written response to the motion must be filed and personally served on all parties. The response shall state with particularity the grounds for opposition to the motion, supported by legal authority, if applicable. If no response is filed, the motion shall be granted with the exception of certain proceedings in Probate.

execution may issue if necessary after thirty (30) days of the entry of this Order.

Thus, the trial court simultaneously struck Mr. Schmidt's answer and entered a default judgment against him for failure to file an answer to the amended complaint.

The trial court held a hearing on damages on June 3, 2014. On the same day, the trial court entered a written order awarding Dr. Loden $1.00 in nominal damages, and a permanent injunction barring Mr. Schmidt and his agents or assigns:

> [F]rom contacting or attempting to contact any prospective, current, or past patient of [Dr.] Loden [] or Loden Vision Centers via Facebook or any other internet site or any other medium of communication including, but not limited to, the internet, U.S. mail, telephone, facsimile, in-person or any other means of communication for the purpose of interfering with said patients' business relationship with [Dr.] Loden [] or Loden Vision Centers. [Mr.] Schmidt shall be allowed to make postings on the internet under his own name and can make any posting about any aspect of Lasik surgery as long as [Mr.] Schmidt does not mention in any way Dr. James C. Loden or Loden Vision Centers.

Further, the trial court enjoined Mr. Schmidt and his agent or assigns from making any untrue or defamatory statements regarding Dr. Loden or Loden Vision Center, or making harassing or threatening communications to Dr. Loden, Loden Vision Center, or any employees or agent of Loden Vision Center. Mr. Schmidt filed a timely notice of appeal.

**Analysis**

Mr. Schmidt raises one issue for review, namely: "Whether the Second Circuit Court of Davidson County erred by granting a default judgment against [Mr. Schmidt] and granting [Dr. Loden] a permanent injunction when [Dr. Loden's] unmeritorious charges of malicious prosecution, tortious interference, and defamation were never heard on the merits." Before addressing the substantive arguments raised by Mr. Schmidt, we first must discuss the deficiencies in Mr. Schmidt's appellate brief.

We recognize that Mr. Schmidt is proceeding pro se in this appeal and, therefore, may not be fully familiar in the Rules of this Court. Accordingly, we keep in mind the following

5

guidance in considering Mr. Schmidt's brief:

> Parties who decide to represent themselves are entitled to fair and equal treatment by the courts. The courts should take into account that many pro se litigants have no legal training and little familiarity with the judicial system. However, the courts must also be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary. Thus, the courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe.
> 
> The courts give pro se litigants who are untrained in the law a certain amount of leeway in drafting their pleadings and briefs. Accordingly, we measure the papers prepared by pro se litigants using standards that are less stringent than those applied to papers prepared by lawyers.
> 
> \* \* \*
> 
> Even though the courts cannot create claims or defenses for pro se litigants where none exist, they should give effect to the substance, rather than the form or terminology, of a pro se litigant's papers.

*Hessmer v. Hessmer*, 138 S.W.3d 901, 903–04 (Tenn. Ct. App. 2003) (internal citations omitted); *see also Young v. Barrow*, 130 S.W.3d 59, 63 (Tenn. Ct. App. 2003); *Edmundson v. Pratt*, 945 S.W.2d 754, 755 (Tenn. Ct. App. 1996); *Kaylor v. Bradley*, 912 S.W.2d 728, 733 n.4 (Tenn. Ct. App. 1995).

Rule 27 of the Tennessee Rules of Appellate Procedure contains the mandatory contents for an appellate brief. Relevant to this appeal, Rule 27 provides:

> **(a) Brief of the Appellant.** The brief of the appellant **shall contain** under appropriate headings and in the order here indicated:
> 
> \* \* \*
> 
> (6) A statement of facts, setting forth the facts relevant to the issues presented for review w**ith appropriate references to the record**;
> 
> (7) An argument, which may be preceded by a summary of

argument, setting forth:

> (A) the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities **and appropriate references to the record** (which may be quoted verbatim) relied on; and
> (B) for each issue, a concise statement of the applicable standard of review (which may appear in the discussion of the issue or under a separate heading placed before the discussion of the issues); . . . .

> \* \* \*

> **(i) Page Limitations.** Except by order of the appellate court or a judge thereof, **arguments in principal briefs shall not exceed 50 pages**, and arguments in reply briefs shall not exceed 25 pages.

Tenn. R. Civ. P. 27 (some emphasis added).

Mr. Schmidt's brief is deficient in two respects. First, the argument section of Mr. Schmidt's appellate brief totals sixty-six pages. Clearly, Rule 27(i) mandates that the arguments section of briefs filed with this Court not exceed fifty pages; accordingly, Mr. Schmidt failed to comply with this mandate.

Even more importantly, Mr. Schmidt's appellate brief contains no references to the trial record, either in the statement of facts or argument sections of his brief. The obligation to provide appropriate references to the record is not a mere technicality, but instead promotes the important consideration of judicial economy. "[T]his Court is under no duty to blindly search the record in order to find . . . evidence to support [Mr. Schmidt's arguments]." *Pearman v. Pearman*, 781 S.W.2d 585, 588 (Tenn. Ct. App. 1989) (citations omitted). Our courts have repeatedly held that the failure to make appropriate references to the record on appeal may result in a waiver of the argument on appeal. *See, e.g., Forbess v. Forbess*, 370 S.W.3d 347, 355 (Tenn. Ct. App. 2011); *Chiozza v. Chiozza*, 315 S.W.3d 482, 489 (Tenn. Ct. App. 2009); *Lett v. Collis Foods, Inc.*, 60 S.W.3d 95, 105 (Tenn. Ct. App. 2001); *Bean v. Bean*, 40 S.W.3d 52, 55 (Tenn. Ct. App. 2000); *Rampy v. ICI Acrylics, Inc.*, 898 S.W.2d 196, 210 (Tenn. Ct. App. 1994). Mr. Schmidt's complete failure to provide any references to the record as required by the Tennessee Rules of Appellate Procedure,

especially given the trial court's finding that Mr. Schmidt willfully failed to comply with the Tennessee Rules of Civil Procedure, is troubling to this Court.

This Court may have been inclined to overlook these deficiencies given Mr. Schmidt's pro se status. However, another deficiency in Mr. Schmidt's appellate brief is fatal to his appeal. As previously discussed, while Mr. Schmidt raises as an issue the trial court's decision to grant a default judgment to Dr. Loden, he cites no authority regarding default judgments or discovery sanctions in his appellate brief. Instead, Mr. Schmidt appears to argue that Dr. Loden was not entitled to a default judgment because he could not prevail in his underlying malicious prosecution, tortious interference, defamation, and intentional infliction of emotional distress claims had a trial on the merits been conducted. Respectfully, whether Dr. Loden could have prevailed in a trial on the merits is not at issue in this appeal. The only issue appropriately reviewable is whether the trial court appropriately struck Mr. Schmidt's answer as a discovery sanction, leading to the entry of a default judgment in Dr. Loden's favor.[7]

Mr. Schmidt's appellate argument appears to be based upon a misapprehension of what a default judgment means. Accordingly, a brief review of the law surrounding discovery sanctions and default judgments is appropriate. Discovery sanctions are governed by Rule 37.02 of the Tennessee Rules of Civil Procedure. Rule 37 provides that if a party "fails to obey an order to provide or permit discovery . . . the court in which the action is pending may make such orders in regard to the failure as are just[.]" Rule 37.02 provides a "broad but not exclusive list of sanctions available to a trial court when a party fails to obey an order compelling discovery." *Dhillon v. Dhillon*, No. M2009-00017-COA-R3-CV, 2010 WL 1254365, at *9 (Tenn. Ct. App. Mar. 31, 2010); *Magness v. Couser*, No. M2006-00872-COA-R3-CV, 2008 WL 204116, at *6 (Tenn. Ct. App. Jan. 24, 2008). Of the actions the court may take to punish a discovery violation, one of the most significant is the power to strike pleadings and enter default judgment. Specifically, the court is allowed to enter "[a]n order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party; . . . ." Tenn. R. Civ. P. 37.02(C). "Although this sanction is extreme, it is appropriate 'where there has been a clear record of delay or contumacious conduct.'" *Amanns v. Grissom*, 333 S.W.3d 90, 99 (Tenn. Ct. App. 2010) (quoting *Potts v. Mayforth*, 59 S.W.3d 167, 171 (Tenn. Ct. App. 2001) (quoting *Shahrdar v. Global Hous. Inc.*, 983 S.W.2d 230, 236 (Tenn. Ct. App. 1998) (internal citations omitted))).

---

[7] Although not designated as an issue, Mr. Schmidt also raises an argument regarding the constitutionality of the injunction entered by the trial court. We discuss this argument briefly, *infra*.

By its plain language, the provisions of Rule 37.02 primarily apply to sanctions for non-compliance with a court order. *Alexander v. Jackson Radiology Assocs., P.A.*, 156 S.W.3d 11, 15 (Tenn. Ct. App. 2004) (citing *Lyle v. Exxon*, 746 S.W.2d 694, 698–99 (Tenn.1988)). However, trial courts also possess the inherent authority to order sanctions as necessary to prevent abuse of the discovery process. *Alexander*, 156 S.W.3d at 15 (citing *Mercer v. Vanderbilt Univ., Inc.*, 134 S.W.3d 121, 133 (Tenn. 2004)). The purpose of Rule 37.02 was explained by this Court:

> The discovery rules would be ineffectual if courts did not have the authority to impose sanctions for their abuse. Thus, the Tennessee Rules of Civil Procedure authorize serious sanctions against persons who seek to evade or thwart full and candid discovery, including being found in contempt, having designated facts be taken as established, striking pleadings, dismissing an action or claim or granting a judgment by default, or assessing expenses and attorneys' fees. These sanctions serve a three-fold purpose: (1) to secure a party's compliance with the discovery rules, (2) to deter other litigants from violating the discovery rules, and (3) to punish parties who violate the discovery rules.

*Mansfield v. Mansfield*, No. 01A019412CH0058, 1995 WL 643329, at *5 (Tenn. Ct. App. Nov. 3, 1995) (citations omitted). The question of whether a trial court has imposed an appropriate discovery sanction is reviewed under the abuse of discretion standard. *Griffith Services Drilling, LLC v. Arrow Gas & Oil, Inc.*, 448 S.W.3d 376, 379 (Tenn. Ct. App. 2014) (citing *Cincinnati Ins. Co. v. Mid-South Drillers Supply, Inc.*, No. M2007-00024-COA-R3-CV, 2008 WL 220287, at *3–4 (Tenn. Ct. App. Jan. 25, 2008)).

Here, the trial court specifically found that Mr. Schmidt willfully and repeatedly failed to respond to discovery requests, despite being well-informed of his duty to do so. Accordingly, the trial court entered a default judgment against Mr. Schmidt. Default judgments are governed by Rule 55.01 of the Tennessee Rules of Civil Procedure, which provides, in pertinent part: "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, judgment by default may be entered . . . ." As recently explained by this Court:

> Judgment by default (previously called judgment pro confesso) is an expediting procedure which acts as a deterrent to defending parties resorting to delay as an element of their

9

litigation strategy. Generally, a default judgment is sought by a party seeking "affirmative relief" when his adversary fails to properly and timely respond to an initial pleading....

**Generally, the entry of a default judgment has the effect of an answer admitting the well-pleaded material allegations of fact contained in the adversary's pleading and fair inferences therefrom** . . . .

In addition to creating admissions as to factual statements in prior unanswered pleadings, the default judgment has a second important purpose: "to record that time for pleadings has past; that one party has failed to plead; but that the case may proceed to trial without waiting for delinquent parties."

*H.G. Hill Realty Co., L.L.C. v. Re/Max Carriage House, Inc.*, 428 S.W.3d 23, 30 (Tenn. Ct. App. 2013) (emphasis added) (quoting Lawrence A. Pivnick, *Tennessee Circuit Court Practice*, § 27.2 (2012) (footnotes omitted)). Thus, a default judgment is "a final order disposing of a case on its merits, like any other judgment." *H.G. Hill Realty*, 428 S.W.3d at 30. The standard of review of the entry of a default judgment is likewise an abuse of discretion. See *Tenn. Dep't of Human Servs. v. Barbee*, 689 S.W.2d 863, 866 (Tenn. 1985).

In his appellate brief, Mr. Schmidt argues nothing regarding the trial court's decision to impose the extreme sanction of a default judgment due to his failure to comply with discovery orders. In addition, Mr. Schmidt's brief contains no citation to authority regarding discovery sanctions, default judgments, or the standard of review applicable in this case. *See* Tenn. R. App. P. 27(a)(7(B) (requiring that the appellant include in her or his appellate brief "for each issue, a concise statement of the applicable standard of review"). Furthermore, Mr. Schmidt appears to misapprehend the practical effect of a default judgment. Here, he argues that Dr. Loden failed to "provide proof via discovery" to support his allegations of malicious prosecution, tortious interference, defamation, and intentional infliction of emotional distress. However, as previously discussed, the entry of a default judgment "has the effect of an answer admitting the well-pleaded material allegations of fact contained in the adversary's pleading and fair inferences therefrom." *H.G. Hill Realty*, 428 S.W.3d at 30 (quoting *Tennessee Circuit Court Practice*, § 27.2). Dr. Loden's complaint contains well-pleaded allegations that Mr. Schmidt incessantly harassed Dr. Loden and his staff, engaged in an untrue "smear campaign" against Dr. Loden, defamed Dr. Loden to potential patients on the internet, threatened Dr. Loden, and engaged in other inappropriate behavior directed toward Dr. Loden and his staff. Regardless of any proof, the default judgment resulted in these facts being admitted as if a trial on the merits had been conducted that substantiated these claims. *H.G. Hill Realty*, 428 S.W.3d at 30. While asserting a meritorious defense may be one

10

element in deciding whether a trial court should have set aside a default judgment, *see Reynolds v. Battles*, 108 S.W.3d 249, 252 (Tenn. Ct. App. 2003), Mr. Schmidt did not request this relief in the trial court, nor has he addressed any of the other elements required to obtain this relief in his appellate brief. [8] Accordingly, Mr. Schmidt's contention that the allegations in the amended complaint are not supported by evidence is irrelevant to the question of whether the trial court properly entered a default judgment against Mr. Schmidt as a discovery sanction.

In conclusion, Mr. Schmidt does not argue in his appellate brief that the trial court abused its discretion in finding that Mr. Schmidt's discovery violations warranted the extreme sanction of default judgment. In addition, nothing filed by Mr. Schmidt in the trial court nor in this Court may be fairly construed as a request to set aside the default judgment entered by the trial court. As previously discussed, this Court cannot construct a party's argument or assert new or additional claims for the party, even where that party is proceeding pro se. *Hessmer*, 138 at 903–04; *see also Heilig v. Heilig*, No. W2013-01232-COA-R3-CV, 2014 WL 820605, at *7 (Tenn. Ct. App. 2014) (Kirby, J., dissenting in part) ("[A]ll litigants, including pro se litigants, must give us the information necessary to address the issue on appeal without searching the record and constructing an argument for the litigant."). Furthermore, even though an issue may be raised in the issues section of a party's brief, the failure to argue the issue and cite appropriate legal authority in the argument section of the brief will result in a waiver of the issue on appeal. *See Hodge v. Craig*, 382 S.W.3d 325, 335 (Tenn. 2012) ("An issue may be deemed waived, even when it has been specifically raised as an issue, when the brief fails to include an argument satisfying the requirements of Tenn. R. App. P. 27(a)(7)."); *Hawkins v. Hart*, 86 S.W.3d 522, 531 (Tenn. Ct. App. 2001) ("Where a party makes no legal argument and cites no authority in support of a position, such issue is deemed to be waived and will not be considered on appeal."). Consequently, we must conclude that the dispositive issue in this case, whether the trial court appropriately entered a default judgment against Mr. Schmidt as a discovery sanction, has been waived.

Finally, we note that in addition to his argument regarding Dr. Loden's failure to prove the allegations contained in the amended complaint, Mr. Schmidt argues that the injunction entered by the trial court violates his right to free speech under the First Amendment of the United States Constitution. The constitutionality of the trial court's order was not specifically raised in Mr. Schmidt's statement of the issues section of his appellate

---

[8] The other elements used to determine whether a trial court should have set aside a default judgment involve whether the default was willful and the amount of prejudice that may result to the non-defaulting party if the default judgment is set aside. *Reynolds*, 108 S.W.3d at 252 (citing *Tenn. Dep't of Human Serv. v. Barbee*, 689 S.W.2d 863, 866 (Tenn.1985)).

brief. This Court has previously determined a party's failure to designate an argument as an issue in the statement of issues section of the party's appellate brief results in a waiver on appeal. *E.g., **Forbess v. Forbess**,* 370 S.W.3d 347, 356 (Tenn. Ct. App. 2011); *see also* Tenn. R. App. P. 13(b) ("Review generally will only extend to those issues presented for review."). We note, however, that Mr. Schmidt did raise this issue in his answer to the amended complaint. Given Mr. Schmidt's pro se status, and in the interest of a full and fair adjudication of this appeal, we exercise our discretion under Rule 2 of the Tennessee Rules of Appellate Procedure to briefly address this argument.[9] Tenn. R. App. P. ("For good cause, including the interest of expediting decision upon any matter, the . . . Court of Appeals . . . may suspend the requirements or provisions of any of these rules in a particular case on motion of a party or on its motion and may order proceedings in accordance with its discretion.").

In his brief, Mr. Schmidt argues that the trial court's injunction constitutes an impermissible prior restraint on speech. To support this argument, Mr. Schmidt cites several federal decisions wherein federal courts have held that damages are the only appropriate remedy in defamation cases. *See, e.g., **Alexander v. U.S.**,* 509 U.S. 544, 550, 113 S.Ct. 2766 (1993) ("Temporary restraining orders and permanent injunctions— i.e., court orders that actually forbid speech activities—are classic examples of prior restraints."); ***Org. for a Better Austin v. Keefe***, 402 U.S. 415, 91 S.Ct. 1575 (1971) (reversing injunction preventing defendant from distributing leaflets concerning real estate broker's business practices).

An impermissible "prior restraint" exists when the exercise of First Amendment rights depends upon prior approval of public officials. ***Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cnty.***, 274 F.3d 377, 400 (6th Cir. 2001), *cert. denied* 535 U.S. 1073, 122 S.Ct. 1952, 152 L.Ed.2d 855 (2002). A system creating prior restraints bears a heavy presumption against its constitutional validity. ***Id.*** (citing ***Freedman v. Maryland***, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965)). In the context of protected speech, "'prior restraint' is a label used in constitutional law to describe administrative or judicial orders that forbid a communication when issued in advance of the time that the communication is to occur: Governmental action constitutes a prior restraint when it is directed to suppressing speech because of its content before the speech is communicated." 2 J. Thomas McCarthy, *Rights of Publicity and Privacy* § 11:24 Injunctions–Prior Restraint Rule (2d ed.). Accordingly, the First Amendment of the United States Constitution, and Article I, Section 19 of the Tennessee Constitution, provide broad protections to prevent the abridgment of a

---

[9] We note that our decision to "soldier on" in spite of Mr. Schmidt's failure to properly raise this issue should not be construed as an indication that waiver does not typically apply in this situation. We caution litigants that although we have reviewed the issue in this case, we may not be as forgiving in the future.

person's right to freedom of speech. These protections require the application of strict scrutiny review when a court is presented with the question of whether a person's fundamental rights, such as freedom of speech, have been infringed. *See generally **San Antonio Indep. School Dist. v. Rodriguez***, 411 U.S. 1, 16, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). Strict scrutiny requires that the restraint on speech be "narrowly tailored to serve a compelling governmental interest." ***Pleasant Grove City, Utah v. Summum***, 555 U.S. 460, 469, 129 S.Ct. 1125, 172 L.Ed.2d 853 (2009).

The traditional rule advanced by Mr. Schmidt states that "equity does not enjoin a libel or slander and that the only remedy for defamation is an action for damages." *See, e.g.,* ***Lothschuetz v. Carpenter***, 898 F.2d 1200, 1206 (6th Cir. 1990) (quoting ***Cmty. for Creative NonViolence v. Pierce***, 814 F.2d 663, 672 (D.C.Cir. 1987)). Injunctions to enjoin a libel are traditionally disfavored under both common-law and First Amendment prior restraint doctrines. *See, e.g.,* ***Alberti v. Cruise***, 383 F.2d 268 (4th Cir. 1967); ***Parker v. Columbia Broad. Sys., Inc.***, 320 F.2d 937 (2d Cir.1963); ***Crosby v. Bradstreet Co.***, 312 F.2d 483 (2d Cir. 1963); ***Kukatush Min. Corp. (N.P.L.) v. SEC***, 309 F.2d 647 (D.C. Cir. 1962); ***Robert E. Hicks Corp. v. Nat'l Salesmen's Training Ass'n***, 19 F.2d 963 (7th Cir. 1927); ***Konigsberg v. Time, Inc.***, 288 F.Supp. 989 (S.D.N.Y.1968); ***Am. Broad.Cos., Inc. v. Smith Cabinet Mfg. Co., Inc.***, 312 N.E.2d 85 (Ind. 1974); ***Greenberg v. De Salvo***, 229 So.2d 83 (La. 1969); ***Krebiozen Research Found. v. Beacon Press, Inc.***, 334 Mass. 86, 134 N.E.2d 1 (Mass. 1956); ***Willing v. Mazzocone***, 393 A.2d 1155 (Pa. 1978); ***Pirmantgen v. Feminelli***, 745 S.W.2d 576 (Tex. Ct. App. 1988); ***Pierce***, 814 F.2d at 672. From our research, however, a trend has emerged in both state and federal courts allowing injunctions against speech that has been determined to be false by a fact-finder. *See **Lothschuetz v. Carpenter***, 896 F.2d 1200 (6th Cir.1990); ***Lassiter v. Lassiter***, 456 F.Supp.2d 876, 884 (E.D.Ky. 2006); ***Auburn Police Union v. Carpenter***, 8 F.3d 886, 903 (1st Cir. 1993); ***Balboa Island Village Inn, Inc. v. Lemen***, 156 P.3d 339, 320 (Cal. 2007), *as modified*, (Apr. 26, 2007); ***Retail Credit Co. v. Russell***, 218 S.E.2d 54, 62–63 (Ga. 1975); ***Hill v. Petrotech Res. Corp.***, 325 S.W.3d 302, 307 (Ky. 2010); ***Advanced Training Sys., Inc. v. Caswell Equip. Co., Inc.***, 352 N.W.2d 1, 11 (Minn.1984); ***Sid Dillon Chevrolet–Oldsmobile–Pontiac, Inc. v. Sullivan***, 251 Neb. 722, 559 N.W.2d 740, 733 (Neb. 1997); ***O'Brien v. Univ. Cmty. Tenants Union, Inc.***, 42 Ohio St.2d 242, 327 N.E.2d 753, 755 (Ohio 1975); ***Kramer v. Thompson***, 947 F.2d 666, 676 (Pa. 1991).

This Court recently adopted what it deemed the "more modern rule" allowing injunctions against defamatory speech in ***In re Conservatorship of Turner***, No. M2013-01665-COA-R3-CV, 2014 WL 1901115 (Tenn. Ct. App. 2014) (no perm. app. filed). ***Turner*** involved a conservatorship action over the parties' mentally-disabled adult son. ***Id.*** at *1. The son's mother continued to levy what the trial court found to be meritless attacks against the

parties' older son regarding abuse of the son at issue in the conservatorship proceeding. The trial court found that the attacks were both false and made for a harmful purpose, and entered an injunction preventing the mother from claiming that her older son was guilty of any criminal conduct or entering into any dialog with the younger son regarding "her insinuation that he has somehow been physically probed or someone has carnal knowledge of him specifically his [brother]." *Id.* at \*6. After thoroughly considering the prevailing law on the issue, this Court held that "defamatory speech may be enjoined after a determination that the speech is, in fact, false." *Id.* at \*20.

We note that in ***Turner***, the trial court's determination that the mother's allegations were false came after myriad hearings wherein the trial court determined that the mother's allegations were false and calculated to cause harm. *See id.* at \*2–\*7. The ***Turner*** Court recognized, however, that there was some "leeway" with regard to whether a full evidentiary hearing on the issue of the defamation was required based upon the decision in ***Lothschuetz v. Carpenter***, 898 F.2d 1200 (6th Cir. 1990). In ***Lothschuetz***, the plaintiffs filed a defamation and malicious prosecution action against the defendants. ***Lothschuetz***, 898 F.2d at 1203. Much like in this case, the trial court eventually entered a default judgment against the defendants on the issue of liability, after their repeated failure to respond to discovery requests. *Id.* at 1204. The default resulted in the substantiation of the plaintiffs' claim that the statements were false. *Id.*; *see also **Hill***, 325 S.W.3d at 309 (describing the default judgment in ***Lothschuetz*** as a "final[] adjudicati[on] [that] the complained of statements [were] false"). The trial court, however, refused to grant the plaintiff's request for a permanent injunction preventing the defendants from continuing their defamatory statements, concluding that such an injunction was an impermissible prior restraint on speech.

In a split decision, the United States Court of Appeals for the Sixth Circuit reversed, concluding that because of the defendants' continuing defamation of the plaintiffs, a permanent injunction preventing the defendants from making "statements which have been found in this and prior proceedings to be false and libelous" was appropriate. ***Lothschuetz***, 898 F.2d at 1208–09. Importantly, the Sixth Circuit based its determination that the defendant had made "frequent and continuing defamatory statements" on the basis of a default judgment, and neither the majority, nor the dissent appeared to question that such finding could be established by default.[10] *Id.* at 1209. Thus, the determination that statements were false and defamatory may be based upon an adjudication that results from the entry of a default judgment.

---

10 Judge Ralph B. Guy dissented based on his view that the court should apply the traditional view that injunctions are simply not available remedies in defamation cases. ***Lothschuetz***, 898 F.2d at 1206.

14

Much like in ***Lothschuetz***, the trial court entered a default judgment against Mr. Schmidt due to his repeated discovery violations. Entry of the default judgment resulted in Dr. Loden's allegations that Mr. Schmidt made repeated false and defamatory statements about Dr. Loden, his staff, and Loden Vision Center being admitted as if a trial on the merits had been conducted. *See **H.G. Hill Realty***, 428 S.W.3d at 30. Thus, for the purpose of this case, Mr. Schmidt's statements were determined to be false. As such, ***Turner***'s requirement that an injunction be entered only "after a determination that the speech is, in fact, false" has been met in this case. ***Id.*** at *20. As such, the prior restraint on Mr. Schmidt's speech is not impermissible.[11]

Based on the foregoing, we conclude that the trial court did not err in entering a default judgment against Mr. Schmidt as a result of his discovery violations. Moreover, we conclude that the trial court's entry of a permanent injunction against Mr. Schmidt does not amount to a constitutionally impermissible prior restraint on speech. The judgment of the trial court is, therefore, affirmed.

## Conclusion

The judgment of the Circuit Court of Davidson County is affirmed, and this cause is remanded to the trial court for further proceedings consistent with this Opinion. Costs of this appeal are taxed to Appellant, Gerald Michael Schmidt. Because Gerald Michael Schmidt is proceeding in forma pauperis in this appeal, execution may issue for costs if necessary.

_____
J. STEVEN STAFFORD, JUDGE

---

[11] ***Turner*** makes clear that even a proper prior restraint on speech may be reversed on appeal where it is unconstitutionally broad and not narrowly tailored to survive strict scrutiny. *See **Turner***, 2014 WL 1901115, at *20. Nothing in Mr. Schmidt's appellate brief can be fairly characterized as an argument that the injunction, if found to be permissible as a prior restraint, is overly broad. Accordingly, any question regarding whether the injunction is overly broad is waived.

15